EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Nayri L. Collazo Vázquez<br>Demandante-peticionario<br><br>v.<br><br>Roberto Huertas Infante, Milka Mojica del Toro y la Sociedad de Bienes Gananciales que componen<br>Demandados-recurridos | Certiorari<br><br>2007 TSPR 91<br><br>171 DPR \_\_\_\_ |

Número del Caso: CC-2005-384

Fecha: 14 de mayo de 2007

Tribunal de Apelaciones:

        Región Judicial de Humacao

Juez Ponente:

        Hon. German J. Brau Ramírez

Abogado de la Parte Peticionaria:

        Lcdo. Ángel Marrero Figarella

Abogado de la Parte Recurrida:

        Lcdo. Héctor Anibal Castro-Pérez

Materia: Cobro de Dinero

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Nayri L. Collazo Vázquez
Demandante-peticionario

v.

Roberto Huertas Infante,
Milka Mojica del Toro y la
Sociedad de Bienes
Gananciales que componen
Demandados-recurridos

CERTIORARI

CC-2005-384

SENTENCIA

En San Juan, Puerto Rico, a 14 de mayo de 2007.

El 8 de diciembre de 1993, la Srta. Nayrí Collazo Vázquez otorgó un contrato verbal de opción de compra con el Lcdo. José Antonio Casillas Fernández. Mediante dicho contrato el Lcdo. Casillas Fernández acordó venderle a la Srta. Collazo el siguiente bien inmueble:

> URBANA: Solar marcado con la letra K-dos (K-2) de la Urbanización San Benito, radicada en los Barrios Mabú y Collores del término municipal de Humacao, Puerto Rico, con un área superficial de ochocientos cinco punto cuatro mil doscientos metros cuadrados (805.4200 m/c). En lindes por el NORTE, con Julio Delgado; por el SUR, con solar K-tres (K-3); por el ESTE, con la calle de la urbanización y por el OESTE, con el Desarrollo El Pedregal.

Las partes contratantes acordaron que el precio de compraventa sería de $171,000.00. La Srta. Collazo entregó al Lcdo. Casillas $30,000.00, a ser abonados al precio de compraventa. Así las cosas, el Lcdo. Casillas entregó la posesión del bien a la Srta. Collazo para que le efectuara las mejoras que estimara necesarias. Eventualmente, con el consentimiento de la Srta. Collazo, el Lcdo. Casillas, vendió el inmueble a los recurridos por el precio de $177,000.00.

La Srta. Collazo instó una demanda en Cobro de Dinero y Enriquecimiento Injusto contra los recurridos ante el Tribunal de Primera Instancia. En su demanda alegó que mediante un contrato verbal, los recurridos se obligaron a restituirle los $30,000.00 que ella entregó al Lcdo. Casillas, como el dinero invertido en las mejoras.

Los recurridos alegaron que nunca tuvo lugar dicho convenio verbal. Arguyeron que al pagar $177,000.00 por el inmueble no se subrogaron en el lugar de la Stra. Collazo. La escritura de compraventa número 39 del 14 de junio de 1995, otorgada ante el notario Juan Carlos Miranda Rodríguez fue presentada como evidencia de la transacción.

Desafortunadamente, la Srta. Collazo falleció poco después de su instar su acción ante el Tribunal de Primera Instancia. Sus padres, los peticionarios, presentaron la correspondiente solicitud de sustitución el 16 de agosto de 2002, y a pesar de la oposición de los recurridos, el tribunal acogió su solicitud favorablemente.

Mediante un Requerimiento de Admisiones, los peticionarios solicitaron a los recurridos que admitieran su compromiso a pagar por las mejoras realizadas en la propiedad. Además, se les requirió que admitieran que en la suma pagada por ellos al Lcdo. Casillas estaban incluidos los $30,000.00 del adelanto que pagó la Srta. Collazo. El requerimiento fue notificado a los recurridos el 15 de marzo de 1999, pero éstos alegaron haberlo recibido el 18 de marzo de 1999, por lo cual lo contestaron el 7 de abril de 1999, tres días después de vencido el término de rigor. En su contestación los recurridos negaron la mayor parte de las alegaciones.

Los peticionarios solicitaron que se diese por admitido todo el contenido del Requerimiento de Admisiones, de acuerdo al mandato de la Regla 33 de las de Procedimiento Civil 32 L.P.R.A. Ap. III, R. 33, y que se dictara sentencia sumaria a su favor a base de los requerimientos admitidos. El tribunal dictó una "Resolución y/o Sentencia Sumaria Parcial" en la que ordenó a los recurridos rembolsar a los peticionarios la partida de $30,000.00 que la Srta. Collazo dio al Lcdo. Casillas Fernández como adelanto del precio de compraventa. En cuanto al dinero invertido por la Srta. Collazo en remodelar la propiedad, el tribunal ordenó la celebración de una vista en su fondo, de manera que las partes pudieran presentar la evidencia necesaria para determinar la cuantía.

Luego de acudir en reconsideración de esta determinación del Tribunal de Primera Instancia, los recurridos presentaron un recurso de *Certiorari* ante el Tribunal de Apelaciones. Ese foro desestimó el recurso por haberse presentado tardíamente, pero reconoció que la "Resolución y/o Sentencia Parcial" recurrida carecía de finalidad, al no contener la certificación requerida por la Regla 43.5 de las de Procedimiento Civil. 32 L.P.R.A. Ap. III, R. 43.5.[1] Devuelto el caso al Tribunal de Primera Instancia, éste reiteró el carácter final y firme de su "Resolución y/o Sentencia Parcial".

Celebrada la vista en su fondo, el Tribunal de Primera Instancia le confirió entera credibilidad a la prueba de los peticionarios, por lo que concedió las partidas reclamadas por dicha parte. La decisión del foro de primera instancia se basó en el Requerimiento de Admisiones que se dio por admitido, en el acuerdo verbal entre la Srta. Collazo y los recurridos y en los principios generales del enriquecimiento injusto.

Apelada la decisión, el Tribunal de Apelaciones desestimó la demanda. Dicho foro señaló como dato importante que los recurridos habían pagado una cantidad mayor al

---

[1] Dicha regla prescribe que el tribunal puede dictar sentencia final en cuanto a una o más de las reclamaciones o partes de un pleito sin disponer de la totalidad del mismo, siempre que concluya expresamente que no existe razón para posponer dictar sentencia sobre tales reclamaciones o partes hasta la resolución total del pleito. Sólo cuando se haga la referida conclusión y se ordene el registro, se entenderá final la sentencia parcial.

precio opcionado por la peticionaria como precio de compraventa. Concluyó el tribunal apelativo que el Lcdo. Casillas retuvo para sí los $30,000.00 del adelanto, pues los recurridos, ni se subrogaron en el lugar de la peticionaria, ni se beneficiaron de dicha cantidad en la compraventa. Además, el Tribunal determinó que el Tribunal de Primera Instancia había errado al resolver dicha controversia utilizando el mecanismo de la Regla 33 de las de Procedimiento Civil, *supra*, en contravención a lo resuelto por este Tribunal en Audiovisual Language v. Sist. Est. Natal Hnos, 144 D.P.R. 574 (1997).

En cuanto a la partida concerniente a las mejoras, decretó el Tribunal de Apelaciones que de acuerdo al artículo 287 del Código Civil, 31 L.P.R.A. sec. 1131, y en virtud del derecho de accesión allí conferido, no procedía dicho pago. El foro apelativo determinó que el Lcdo. Casillas, como titular de la propiedad al momento en que se hicieron las mejoras, tenía derecho a hacerlas suyas. Por eso los recurridos tampoco estaban obligados a pagarle a los peticionarios por las mejoras hechas por la Srta. Collazo.

Los herederos de la Srta. Nayrí Collazo Vázquez, nos solicitan que revoquemos la sentencia dictada por el Tribunal de Apelaciones. Los peticionarios, nos piden que de acuerdo a las determinaciones del Tribunal de Primera Instancia, reconozcamos la existencia de un contrato verbal entre la fenecida y los recurridos y ordenemos a éstos últimos a cumplir con lo convenido en dicho contrato.

Examinada la solicitud de *Certiorari* concedimos término a los recurridos para que mostraran causa por la cual no debíamos expedir el auto solicitado y revocar en parte la sentencia del Tribunal de Apelaciones, específicamente en cuanto a su decisión de no conceder el pago de $29,472.00 en concepto de gastos incurridos en mejorar el inmueble adquirido por los recurridos.

Con el beneficio de las comparecencias de ambas partes este Tribunal expidió el auto y la mayoría de sus componentes ha acordado revocar en parte la decisión del Tribunal de Apelaciones. Por lo que se ordena a los recurridos a pagar a los peticionarios la cantidad de $29,472.00 por concepto de los gastos incurridos en las mejoras al inmueble de su propiedad.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal. El Juez Asociado señor Fuster Berlingeri y la Jueza Asociada señora Rodríguez Rodríguez concurren con el resultado sin opinión escrita. El Juez Asociado señor Rivera Pérez emite Opinión de Conformidad. La Jueza Asociada señora Fiol Matta concurre con el resultado con opinión escrita. El Juez Asociado señor Rebollo López disiente por entender que un adquirente de una propiedad que no tuvo nada que ver con un negocio anterior de opción de compra, otorgado por el dueño de dicha propiedad y, por ende, nada que ver con la construcción de mejoras en dicha propiedad por parte del optante, quien construyó las mejoras con la aquiescencia del dueño de la propiedad, no tiene ni debe tener obligación

jurídica alguna de pagarle al optante por dichas mejoras. Entiende, además, el Juez Asociado señor Rebollo López que la norma mayoritaria hoy establecida --la cual es por tiempo indefinido-- no solo es errónea sino que causará un serio disloque en el tráfico jurídico de inmuebles en nuestra jurisdicción; ello en vista de que, al amparo de dicha norma, el adquirente de una propiedad puede venir obligado a pagar por una serie de mejoras realizadas con anterioridad a la fecha de la compra de la propiedad, lo cual tendrá la consecuencia nociva de hacer aun más difícil la decisión de comprar una propiedad en Puerto Rico. El Juez Presidente señor Hernández Denton se une a las expresiones del Juez Asociado señor Rebollo López.


                                        Aida Ileana Oquendo Graulau
                                        Secretaria del Tribunal Supremo



                    EN EL TRIBUNAL SUPREMO DE PUERTO RICO



Nayri L. Collazo Vázquez

     Demandante Peticionaria

              v.                        CC-2005-384

Roberto Huertas Infante, Milka
Mojica del Toro y la Sociedad
de Bienes Gananciales que
componen

     Demandados Recurridos

Opinión de Conformidad emitida por el Juez Asociado señor Rivera Pérez

San Juan, Puerto Rico, a  14 de mayo de 2007.

El caso de autos presenta una sencilla controversia: <u>resolver si merecía deferencia judicial la determinación de hecho del Tribunal de Primera Instancia</u>, al efecto de que los demandados <u>se obligaron</u> a reembolsar a la demandante determinados gastos útiles y en concepto de mejoras, por ella incurridos, en un bien inmueble, adquirido por los primeros vía compraventa, y sobre el cual, previamente, la última ostentó su posesión y una frustrada opción de compra.

I

En julio de 1996, la señora Nayri Collazo Vázquez, en adelante señora Collazo Vázquez, instó en el Tribunal de Primera Instancia **una acción civil y personal de "cobro de dinero" y "enriquecimiento injusto"** contra el licenciado Roberto Huertas Infante, en adelante licenciado Huertas Infante, su esposa, la señora Milka Mojica del Toro, y la sociedad legal de gananciales compuesta por ambos, en lo sucesivo, esposos Huertas-Mojica.[2] Como cuestión de hecho, el tribunal denominó la acción presentada como "Civil Núm. H CD 1996-0052, Sobre: Cobro de Dinero".[3]

En su demanda, la señora Collazo Vázquez alegó que, el 8 de diciembre de 1993, otorgó un contrato de opción de compra con el licenciado José Antonio Casillas Fernández, en adelante licenciado Casillas. Adujo que mediante el referido contrato, obtuvo la opción de comprarle un bien inmueble, consistente en un solar y una edificación residencial enclavada en el mismo, sito en la Urbanización San Benito del municipio de Humacao, bajo el convenido precio de $171,000.[4]

La señora Collazo Vázquez sostuvo, además, que con el otorgamiento del contrato de opción, entregó $30,000 al

---

[2] Apéndice del recurso de *Certiorari*, págs. 18-21.

[3] Íd., pág. 1.

[4] Íd., pág. 18.

licenciado Casillas, constitutivos de un adelanto del precio de compraventa. Arguyó que, a su vez, y en consideración a dicho adelanto, el licenciado Casillas le entregó la posesión del inmueble y la autorizó a practicarle mejoras a la edificación.[5] Alegó que, en efecto, introdujo mejoras al inmueble.

Por otro lado, señaló que, posteriormente, por razón de haber gastado en mejoras el dinero con que habría de comprar el inmueble en cuestión, y ante la imposibilidad de adquirirlo, llegó a un acuerdo referente a la propiedad con el codemandado licenciado Huertas Infante. Según alegó, ella y el licenciado Huertas Infante tenían entonces una relación de amistad, cimentada en el hecho de que ella y la hermana de éste, de nombre Gladys Huertas Infante, sostenían una relación consensual.[6]

Arguyó que, en esencia, el acuerdo fue el siguiente: en ánimo de no perder los $30,000 que adelantó al licenciado Casillas al otorgar el contrato de opción de compraventa, ni el dinero invertido en mejorar la residencia, ella renunciaba a su opción, para que el licenciado Huertas Infante pudiera comprar la propiedad, a cambio de lo cual le reembolsaría ambas partidas. Específicamente, sostuvo que, en consideración a la relación que tenían, el licenciado Huertas Infante le representó que adquiriría el

---

[5] Íd., pág. 19.

[6] Íd., pág. 19. Por otro lado, en su sentencia, el Tribunal de Primera Instancia expresó que la amistad se debía, además, a que, previamente, el licenciado Huertas Infante la había representado con éxito en un caso de daños y perjuicios. Íd., pág. 9.

bien inmueble y lo refinanciaría "para pagarle su inversión".[7]

Así, la señora Collazo Vázquez alegó que, el 14 de junio de 1995, los esposos Huertas-Mojica compraron al licenciado Casillas el inmueble en controversia por la suma de $177,000, esto es, $6,000 adicionales al precio de compraventa que originalmente ella había convenido con éste. Añadió que, posteriormente, procedió a reclamarle a los esposos Huertas-Mojica el pago de los aludidos $30,000 y el reembolso de los gastos en mejoras incurridos por ella en la propiedad enajenada. Sostuvo que sus gestiones en tal sentido resultaron infructuosas.[8]

Añadió que el licenciado Huertas Infante, no sólo incumplió su compromiso, sino que, a pesar de reconocer la existencia de la deuda, se negó a evidenciarla y a garantizarla por escrito, aduciendo que, siendo una obligación sin plazo, él no se lo iba a fijar. En ese sentido, alegó que los esposos Huertas-Mojica disfrutaban y se beneficiaban injustamente de las mejoras que ella introdujo a la propiedad.[9] Finalmente, suplicó al Tribunal de Primera Instancia que ordenase a los esposos Huertas-Mojica cumplir con la obligación personal contraída.[10]

---

[7] Íd., pág. 19-20.

[8] Íd.

[9] Íd.

[10] Íd., pág. 21.

Por su parte, en su contestación a la demanda, los esposos Huertas-Mojica negaron la existencia de la alegada obligación personal y levantaron las defensas afirmativas de ausencia de hechos que justifiquen la concesión de un remedio, prescripción, impedimento e incuria.[11]

Luego de múltiples incidentes procesales, que incluyeron la sustitución en el pleito de la señora Collazo Vázquez, por su sucesión – a causa de su fallecimiento –, y, efectuado el juicio en su fondo, el Tribunal de Primera Instancia dictó sentencia declarando "Ha Lugar" la demanda de cobro de dinero y enriquecimiento injusto. **Apoyó su dictamen, principalmente, en la credibilidad que le mereció la prueba testifical desfilada en el juicio.**[12]

En síntesis, el Tribunal de Primera Instancia determinó, como hecho probado, que la señora Collazo Vázquez otorgó con el licenciado Casillas un contrato de opción de compraventa sobre la propiedad inmueble antes descrita. Que en el acto de su otorgamiento, entregó al promitente de la opción, licenciado Casillas, $30,000 en concepto de adelanto del precio de compraventa. Asimismo, determinó que, con la aquiescencia del licenciado Casillas, la señora Collazo Vázquez entró en la posesión de la propiedad, con autorización para introducirle mejoras. Además, determinó que, en efecto, ésta realizó mejoras a la

---

[11] Íd., pág. 22. No plantearon ninguna otra defensa ni esgrimieron planteamiento alguno de hecho.

[12] Íd., págs. 1-12, particularmente, las páginas 11-12.

estructura residencial enclavada en el solar, ascendentes a la suma de $29,472.10.

Por otro lado, el Tribunal de Primera Instancia determinó, como hecho probado, que al gastar el dinero que tenía disponible para adquirir la propiedad, y al no poder ejercer su derecho de opción, **la señora Collazo Vázquez acordó verbalmente con los esposos Huertas-Mojica, renunciar a tal derecho, para que éstos pudieran comprar la propiedad, a cambio de que le reembolsaran** los $30,000 que adelantó al licenciado Casillas y lo invertido **en mejoras a la edificación residencial**. Asimismo, determinó que el 14 de junio de 1995, mediante otorgamiento de escritura pública, y por la suma de $177,000, los esposos Huertas-Mojica, en efecto, le compraron al licenciado Casillas la propiedad en cuestión.

Finalmente, el Tribunal de Primera Instancia determinó que, en vida, la señora Collazo Vázquez le requirió sin éxito a los esposos Huertas-Mojica que honraran su compromiso de reembolsarle las mencionadas partidas.

Así las cosas, el Tribunal de Primera Instancia condenó a los esposos Huertas-Mojica a reembolsarle a la señora Collazo Vázquez los $30,000 que adelantó al licenciado Casillas del precio de compraventa y los $29,472.10 que ésta gastó en mejoras al inmueble.[13] En relación con éstas últimas, determinó que consistieron en cambios en los pisos y en la cocina, "incluyendo gabinetes nuevos; puertas y sus

---

[13] Íd., págs. 11-12.

marcos; cerraduras de puertas; baños; trabajos de ebanistería".[14]

Inconformes, los esposos Huertas-Mojica apelaron el dictamen ante el Tribunal de Apelaciones. Éste revocó la sentencia apelada y, en su lugar, ordenó la desestimación de la demanda.[15] El foro intermedio apelativo fundamentó su sentencia revocatoria en dos (2) apuntalamientos principales.

En primer lugar, el Tribunal de Apelaciones expresó que el foro primario erró manifiestamente al concluir que los esposos Huertas-Mojica se obligaron a devolverle a la señora Collazo Vázquez los mencionados $30,000, toda vez que la prueba desfilada en el juicio estableció que, a fin de cuentas, los primeros pagaron al licenciado Casillas la totalidad del precio de $177,000 acordado para la adquisición del inmueble, de manera que este último retuvo para sí el depósito de $30,000.[16] En ese sentido, expresó que era un hecho incontrovertido que el licenciado Casillas no devolvió a la señora Collazo Vázquez los referidos $30,000, ni los acreditó al precio de compraventa que convino con los esposos Huertas-Mojica.[17] Siendo ello así,

---

[14] Íd., pág. 8.

[15] Íd., págs. 770-778.

[16] Íd., págs. 772-773 y, particularmente, la página 780.

[17] Íd., pág. 781. De hecho, aunque el foro a quo no lo indica en su Sentencia, un examen de la demanda presentada por la señora Collazo Vázquez, demuestra que ésta admitió en su aseveración Núm. 10 que la suma que recibió el

concluyó que a éstos no les correspondía reembolsar a la señora Collazo Vázquez los referidos $30,000.

En segundo lugar, el foro intermedio apelativo señaló que, a base del precio de $177,000 pagado por los esposos Huertas-Mojica para adquirir el inmueble[18], no le parecía razonable que éstos se hubiesen obligado a reembolsar a la señora Collazo Vázquez los $29,472.10 gastados en mejoras a la edificación residencial.[19]

Insatisfechos con la determinación del Tribunal de Apelaciones, la sucesión de la señora Collazo Vázquez, compuesta por su padre y madre, señor Inocencio Collazo López y señora Ana R. Vázquez Cruz, en adelante los peticionarios, acudieron oportunamente ante nos mediante recurso de *certiorari*. Señalaron que el foro intermedio apelativo incurrió en el error siguiente:

> ERRO EL HONORABLE TRIBUNAL DE APELACIONES AL REVOCAR AL TRIBUNAL DE INSTANCIA, SUSTITUYENDO SU CRITERIO EN CUESTIONES DE HECHO SIN TENER RAZÓN VÁLIDA EN DERECHO PARA ELLO.

Evaluado el recurso, emitimos una Resolución concediéndole a los esposos Huertas-Mojica un término de treinta (30) días para mostrar causa por la cual no debíamos expedir el auto solicitado y revocar la sentencia

---

licenciado Casillas de parte de los esposos Huertas-Mojica incluía los referidos $30,000. Íd., pág. 19.

[18] Según indicamos antes, $6,000 adicionales al precio de compraventa originalmente convenido por la señora Collazo Vázquez con el licenciado Casillas.

[19] Íd., págs. 10-11.

del Tribunal de Apelaciones, **tan sólo en aquella parte que revoca la determinación del foro primario que les ordena pagar a los peticionarios $29,472.10 por concepto de mejoras realizadas a la propiedad.** Asimismo, le concedimos igual y simultáneo término a los peticionarios para que se expresaran sobre lo anterior, si así lo creían pertinente.

Las partes han comparecido, por lo que estamos en posición de resolver.

II

Surge claramente del cuadro fáctico del caso de autos que ni la demandante original, ni sus sucesores en el litigio, instaron causa de acción alguna de naturaleza real contra los esposos Huertas-Mojica. No invocaron tener derecho alguno de naturaleza real frente a éstos.

Por otro lado, ni la parte demandante ni la parte demandada hicieron planteamiento alguno en esa dirección ante el Tribunal de Apelaciones. Tampoco ante nosotros. Ni el Tribunal de Primera Instancia ni el de Apelaciones atendieron la controversia de marras como una en la que incidieran derechos de naturaleza real. Ambos foros resolvieron la controversia sin hacer pronunciamiento alguno en tal sentido.

El artículo 294 del Código Civil establece que **lo edificado,** plantado o sembrado **en terreno ajeno y las mejoras** o reparaciones **hechas en él,** pertenecen al dueño del mismo, con sujeción a lo dispuesto en los artículos que

le suceden en dicho cuerpo legal.[20] Así, el artículo 297 del Código Civil indica que **el dueño del terreno en que se edificare de buena fe, tendrá derecho a hacer suya la obra**, previo el pago al edificante del costo de los materiales y la mano de obra, o el costo de reproducción de la misma al momento en que **el dueño** del terreno ejercitare su derecho, deduciendo la depreciación, lo que fuere mayor, **o a obligar al que fabricó** a pagar el precio del terreno.[21] Ello, sobre la base de que lo accesorio sigue a lo principal, siendo la superficie terrenal lo principal y la construcción lo accesorio.[22]

Por su parte, el artículo 382 del Código Civil dispone que los **gastos útiles** se abonan al poseedor de buena fe, **ostentando derecho de retención sobre la cosa poseída hasta que le sean satisfechos, pudiendo optar el que le hubiese vencido en la posesión, por satisfacerle** el importe de los gastos **o por abonarle** el aumento de valor que por ellos haya adquirido la cosa.[23]

En E.L.A. v. Tribunal, extendimos expresamente el derecho de retención que consagra el artículo 382 del

---

[20] 31 L.P.R.A sec. 1161.

[21] 31 L.P.R.A sec. 1164.

[22] E.L.A. v. Tribunal, 94 D.P.R. 157, 160 (1967).

[23] 31 L.P.R.A sec. 1468. Aclaramos que dicho artículo dispone que el poseedor de buena fe tiene iguales derechos de abono y retención cuando incurre en gastos necesarios. En vista de que en el caso de marras no se ha planteado controversia alguna en relación a gastos necesarios, omitiremos, en lo sucesivo, toda referencia o discusión en relación a los mismos.

Código Civil, *supra*, al edificante de buena fe que describe el artículo 297 del Código Civil, *supra*.[24]

El análisis de los artículos en cuestión y de la norma jurisprudencial adoptada en el caso citado demuestra que el ordenamiento jurídico supervaloró el derecho propietario del dueño del terreno[25] y el derecho propietario del reinvindicante judicial de la cosa, frente a los derechos conferidos, respectivamente, al edificante de buena fe en terreno ajeno y al poseedor de buena fe que incurre en gastos útiles en la cosa ajena.  Es evidente que tanto el dueño del terreno como el reivindicante judicial de la cosa han sido colocados por el ordenamiento jurídico en una posición favorecida, en relación con el edificante de buena fe y en relación con el poseedor de buena fe, respectivamente.

No es una casualidad que el artículo 297 del Código Civil, *supra*, conceda **exclusivamente** al dueño del terreno el derecho a **optar** entre (1) indemnizar al edificante de buena fe el costo de los materiales y la mano de obra, o el costo de reproducción de la misma al momento en que éste ejercitase su derecho a hacerla suya, deduciendo la depreciación, lo que fuere mayor y (2) obligarlo a pagar el precio del terreno.  Tampoco lo es que el artículo 382 del Código Civil, *supra*, otorgue **exclusivamente** al reivindicante judicial de la cosa poseída de buena fe el

---

[24] 94 D.P.R. 157, 162 (1967).

[25] E.L.A. v. Tribunal, *supra*, pág. 160.

derecho a **optar** entre (1) satisfacer al poseedor vencido en juicio el importe de los gastos útiles incurridos en ella y (2) abonarle el aumento de valor que por ellos haya adquirido.

Como señaláramos anteriormente, en el presente caso, el foro primario determinó, como hecho probado, que durante su tiempo posesorio, la señora Collazo Vázquez le introdujo "mejoras" a la estructura residencial enclavada en el solar, a saber: modificaciones en los pisos y en la cocina, gabinetes nuevos, le puso puertas, marcos y cerraduras de puertas, realizó cambios a los baños y ejecutó trabajos de ebanistería. Además, sabemos que dicho foro determinó que los gastos incurridos en las referidas "mejoras" ascendieron a la suma de $29,472.10.

Si presumimos la corrección de dichas determinaciones de hechos, la señora Collazo Vázquez tenía, en relación a los referidos gastos, ciertos derechos. Veámos.

De concebir a la señora Collazo Vázquez como edificante de buena fe, bajo el artículo 297 del Código Civil, *supra*, y, a su vez, concebir como **mejoras** los cambios introducidos a la estructura residencial, ésta **tenía derecho a que el <u>licenciado Casillas</u>**, antes de vender la propiedad a los terceros, esposos Huertas-Mojica, **le reembolsara** los gastos en materiales y mano de obra incurridos en ellas, **o le indemnizara** con su costo de reproducción al momento en que éste ejercitó su derecho a hacerlas suyas, deduciendo la depreciación, lo que fuere

mayor. Por otro lado, si concibiéramos a la señora Collazo Vázquez como poseedora de buena fe, bajo el artículo 382 del Código Civil, *supra*, y como **gastos útiles** los cambios introducidos a la estructura residencial, **tenía derecho a que el <u>licenciado Casillas</u> se los abonara**, o le abonara el **aumento de valor** que en función de ellos adquirió el bien inmueble.

De otra parte, a tenor con <u>E.L.A. v. Tribunal</u>, *supra*, independientemente de si concebimos a la señora Collazo Vázquez como una edificante de buena fe, como una poseedora de buena fe, o como ambas cosas, tenía **un derecho de garantía muy particular** para proteger su acreencia: **el derecho a retener la cosa** hasta tanto el <u>**licenciado Casillas**</u> le reembolsara, indemnizara o abonara el dinero que le incumbía, según se explicó.

Sin embargo, la señora Collazo Vázquez no le compró la propiedad al licenciado Casillas, y procedió a entregarle su posesión, sin oponerle el citado derecho de garantía, y sin exigirle el reembolso, indemnización o abono de los gastos útiles y en concepto de mejoras en controversia. Lejos de ello, el Tribunal de Primera Instancia determinó que la señora Collazo Vázquez prefirió tratar de conseguir el reembolso del dinero en cuestión por medio de los esposos Huertas-Mojica, quienes, según también determinara, compraron finalmente la propiedad.

Entonces, nos preguntamos, ¿tenía la señora Collazo Vázquez algún **derecho estatutario** frente a los compradores

del bien inmueble?, o, lo que es igual, ¿tenían los compradores alguna **obligación legal** ante la señora Collazo Vázquez?  En definitiva, ¿tiene un poseedor de buena fe y/o edificante de buena fe, que incurre en gastos útiles y/o en concepto de mejoras, en una estructura residencial ajena, y que entrega su posesión a su dueño, sin oponerle el derecho de retención que le confiere el ordenamiento jurídico, algún **derecho de origen estatutario**, frente a un tercero que, finalmente, compra el inmueble?  Desde la perspectiva jurídico-estatutaria, la respuesta es NINGUNO.   Veamos.

Un simple y sereno análisis de los discutidos artículos 297 y 382 del Código Civil, *supra*, demuestra que las únicas relaciones que están sometidas a reglamentación legislativa son, respectivamente, la habida entre (1) el dueño del terreno y el edificante de buena fe, y la habida entre (2) el reivindicante de la cosa y su poseedor de buena fe vencido en juicio.  Como indicáramos antes, el ordenamiento jurídico favoreció al dueño del terreno y al reivindicante judicial de la cosa frente al edificante de buena fe y frente al poseedor de buena fe, respectivamente. Le concedió opciones alternativas a los primeros, justificadas en la máxima de que, como norma general, lo accesorio sigue a lo principal.  En nuestra opinión, los artículos 297 y 382 del Código Civil, *supra*, reconocen al edificante de buena fe y al poseedor de buena fe, respectivamente, derechos personales de crédito, no de

naturaleza real.   Al no tener tal alcance, no pueden invocarse ante terceros.

**La única garantía sobre la cosa**, es decir, sobre la edificación construida o sobre la cosa objeto de gastos útiles **que el ordenamiento jurídico otorgó** al edificante de buena fe y al poseedor de buena fe, respectivamente, **fue el derecho de retención** sobre una u otra.   **Éste** derecho de garantía, **por su naturaleza, es oponible al dueño original del solar ajeno en el que se edificó de buena fe, en el momento en que dicho dueño original reclama al edificante tener derecho propietario, por accesión, sobre la edificación construida.   Asimismo, es oponible al reivindicante judicial de la cosa que fue objeto de gastos útiles, en el momento en que dicho reivindicante reclama a su antiguo poseedor de buena fe la entrega de su posesión, en obediencia al mandato judicial que ordena la reivindicación.**

Obviamente, si el edificante de buena fe o el poseedor de buena fe acceden al reclamo del dueño del solar o reivindicante de la cosa, sin hacer uso del derecho de retención que les asiste, con ello están renunciando a la única garantía que sobre la cosa el ordenamiento jurídico les confirió.   En tal eventualidad, no pierden sus respectivos derechos de crédito **frente al dueño original del solar o reivindicante judicial de la cosa**, sino meramente la garantía que en virtud del derecho de

retención recaía sobre el solar o la cosa, según haya sido el caso.

Por tanto, en ese escenario, el edificante de buena fe o, en su caso, el poseedor de buena fe, todavía podría reclamar del dueño original del solar o del reivindicante judicial de la cosa, en una acción *in personam*, su respectivo derecho de indemnización o reembolso. **Desde la perspectiva estatutaria**, nada puede reclamar contra un tercero adquirente de la cosa, pues, como hemos visto, el ordenamiento jurídico ningún derecho le confirió frente a ese tercero.

**En <u>Berrocal v. Tribunal</u>,**[26] **igual que en el presente caso, no había ante la consideración judicial una acción de naturaleza real.** En aquél, los dueños de un solar lo cedieron en arrendamiento, con permiso para fabricar e introducirle mejoras, a un matrimonio cuyo régimen económico matrimonial era el de sociedad legal de gananciales. Al percatarse de que el matrimonio había comenzado a construir un sólido edificio en el solar, los arrendadores solicitaron y obtuvieron del esposo arrendatario una modificación escrita al contrato, que configuró, en realidad, un nuevo contrato de arrendamiento. Por medio del segundo contrato, el matrimonio se obligaba a retirar lo construido a su vencimiento, sin derecho a compensación o indemnización de clase alguna. Dicho de otra forma, por virtud del nuevo contrato, el matrimonio

---

[26] Íd., págs. 40-46 y 62-63.

renunciaba a la compensación que concede al edificante de buena fe el artículo 297 del Código Civil, *supra*. **La controversia del caso giró, entonces, y específicamente, en torno a si el nuevo contrato fue eficaz en derecho o nulo, por falta del consentimiento escrito de la esposa arrendataria. La disputa era entre arrendadores y arrendatarios. No había terceros envueltos en la misma.**

Además, <u>Berrocal</u>, en sus hechos, es enteramente distinguible del caso que ahora nos ocupa. Allí, por medio del primer contrato, los arrendadores cedieron a los arrendatarios el goce, uso y disfrute de un **solar vacío, con autorización para edificar sobre él.** En efecto, los arrendatarios **construyeron un edificio** sobre el solar.

Sin embargo, en el caso de autos, el licenciado Casillas entregó a la señora Collazo Vázquez la posesión de un bien inmueble, consistente en **un solar y <u>una residencia en él enclavada</u>, <u>sobre la cual</u>,** le autorizó a introducirle **mejoras**. En efecto, en todo momento, la señora Collazo Vázquez y sus sucesores en el pleito han alegado que **introdujeron mejoras a la estructura residencial** enclavada en el solar, **no que construyeran una residencia o edificio de nueva planta.**

Reconocerle al poseedor de buena fe y/o edificante de buena fe un derecho de naturaleza real, a obtener el reembolso, indemnización o abono de los gastos útiles y/o en concepto de mejoras incurridos en una estructura

residencial ajena, no sólo sería una actuación antijurídica sino impráctica.

Anteriormente, indicamos que el Tribunal de Primera Instancia encontró probada la realización de ciertas mejoras a la estructura residencial en cuestión, a saber: modificaciones en los pisos y la cocina, gabinetes nuevos, puertas, marcos y cerraduras de puertas nuevas, cambios a los baños, y la ejecución de trabajos de ebanistería. Preguntémonos, ¿cómo podemos cumplir con el principio de especialidad o especificación, que orienta y sirve de base al sistema inmobiliario registral, a la hora de inscribir el pretendido derecho real? ¿Cómo podemos describir o detallar en el Registro de la Propiedad las especificaciones que conduzcan a la individualización de tales mejoras? ¿Cómo describimos una remodelación de baño, o de cocina, o determinado trabajo de ebanistería? Y ¿cómo se inscribe en el Registro de la Propiedad el derecho pretendido?

De otro lado, ¿qué estaríamos exigiendo a los compradores de residencias en Puerto Rico? ¿Que antes de comprar una residencia, hagan una investigación extraregistral que incluya auscultar si el baño, la cocina, determinada habitación, las puertas, marcos y cerraduras de puertas, fueron introducidas por el propio vendedor, o por un arrendatario anterior, o por un poseedor de buena fe, o por un optante anterior que interesaba comprar la residencia? Incluso, en caso de que el comprador advenga

en conocimiento de este tipo de realidad extraregistral, ¿qué le vamos a exigir? ¿Que le requiera evidencia al vendedor que demuestre que satisfizo al arrendatario, o al poseedor, o al optante, la compensación o los gastos útiles que instituyen los artículos 297 y 382 del Código Civil, *supra*? No podemos imponerle tal carga a la industria de bienes raíces, ni es conveniente hacerlo.

Concluimos que si alguien era **estatutariamente responsable** ante la señora Collazo Vázquez por su acreencia, no eran los esposos Huertas-Mojica.

Ahora bien, aunque los esposos Huertas-Mojica no le respondían estatutariamente a la señora Collazo Vázquez por su acreencia, debemos examinar si le respondían de otra manera.

El artículo 1206 de nuestro Código Civil dispone lo siguiente:

> [e]l contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio.[27]

Mientras, el artículo 1207 de dicho cuerpo reglamentario consagra que:

> [l]os contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público.[28]

Por su parte, el artículo 1210 del Código Civil establece lo siguiente:

---

[27] 31 L.P.R.A sec. 3371.

[28] 31 L.P.R.A sec. 3372.

> [l]os contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza, sean conformes a la buena fe, al uso y a la ley.[29]

El artículo 1044 de nuestro Código Civil postula que:

> [l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos.[30]

Finalmente, el artículo 1208 del referido Código dispone que "[l]a validez y el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes".[31]

Del articulado conjunto, especialmente de los últimos cuatro (4) artículos citados surgen los conocidos principios de la autonomía de la voluntad contractual y de la inalterabilidad del contenido del contrato o *pacta sunt servanda*.

Cabe destacar que, en Puerto Rico, el principio de la autonomía de la voluntad contractual es piedra angular de nuestro sistema económico. El principio nos dice que, en materia de contratos, rige la libertad de contratación entre las partes. Y es que nuestro ordenamiento jurídico ha brindado gran libertad de acción a los particulares que desean obligarse, reconociéndoles una autónoma voluntad para ello. Claro está, dicha autonomía no es ilimitada, pues es nulo un contrato que resulte contrario a las leyes, a la moral o al orden público.[32]

---

[29] 31 L.P.R.A. sec. 3375.

[30] 31 L.P.R.A. sec. 2994.

[31] 31 L.P.R.A. sec. 2994.

[32] De Jesús González v. A.C., 148 D.P.R. 255, 263-264 (1999).

Ese principio no tendría la importancia que reviste en nuestro ordenamiento económico, si no tuviere como contraparte el de la inalterabilidad del contenido del contrato (*pacta sunt servanda*). Éste principio postula que los pactos entre contratantes tienen fuerza de ley y deben ser cumplidos, sin que su validez y cumplimiento pueda quedar al arbitrio de uno sólo de ellos.[33] Así nos hemos expresado en torno al referido principio:

> **[c]ompromiso y rigor es el tenor de este principio. Las partes se obligan a todos los extremos de lo pactado** que sean conformes a la ley, a la moral y al orden público. Por otro lado, la atadura o vínculo contractual tiene sus límites en la voluntad expresa de las partes y, claro está, en todo aquello que sea derivado de las expectativas razonables de lo que la buena fe dicta respecto a la relación contractual.[34]

La prueba testifical que desfiló en la vista evidenciaria del presente caso fue al efecto de que la señora Collazo Vázquez acordó verbalmente con los esposos Huertas-Mojica renunciar a su derecho de opción de compraventa, para que éstos pudieran comprar la residencia en controversia, a cambio de que le reembolsaran los gastos incurridos en mejorarla. En la vista, se admitió prueba de que los esposos Huertas-Mojica, en efecto, compraron la propiedad. Inclusive, desfiló prueba en el sentido de que,

---

[33] Mun. de Ponce v. A.C., 153 D.P.R. 1, 35 (2000); Mun. de Ponce v. Gobernador, 136 D.P.R. 776, 787 (1994) y García v. World Wide Entmt. Co., 132 D.P.R. 378 (1992).

[34] PaineWebber, Inc. v. Service Concepts, Inc. *et al*, 151 D.P.R. 307, 311 (2000).

estando aún viva, la señora Collazo Vázquez visitó a los esposos Huertas-Mojica, en la vivienda que los primeros tenían en las Parcelas Martorell de Yabucoa, ocasión en la que la difunta les requirió el reembolso de los gastos incurridos en las mejoras. Según surge de la transcripción de la vista, al requerimiento de pago, el licenciado Huertas Infante contestó: "tan pronto yo venda la casa te voy a pagar el dinero".[35] Se refería a la casa que vivía en las Parcelas Martorell.[36]

**La prueba antes reseñada, que apuntó a la existencia del referido acuerdo verbal, fue aquilatada y creída por el Tribunal de Primera Instancia.**

El acuerdo que el Tribunal de Primera Instancia estimó probado beneficiaba tanto a la señora Collazo Vázquez como a los esposos Huertas-Mojica. La señora Collazo Vázquez adquirió la opción de comprar la propiedad en $171,000, allá para el 8 de diciembre de 1993 y, año y medio después, el 14 de junio de 1995, los esposos Huertas-Mojica la adquirieron por $177,000. En ese momento, la residencia había recibido una presunta inversión en mejoras de $29,472.10, de parte de la señora Collazo Vázquez. Por tanto, como consecuencia del acuerdo, la señora Collazo Vázquez obtuvo el beneficio de recuperar su inversión en mejoras, mientras que los esposos Huertas-Mojica ganaron acceso a la adquisición por compra de un bien inmueble sustancialmente mejorado.

---

[35] Apéndice del recurso de *Certiorari*, pág. 361.

[36] Íd.

En fin, el Tribunal de Primera Instancia determinó, a base de un ejercicio de credibilidad, que los esposos Huertas-Mojica se obligaron contractualmente a reembolsar a la señora Collazo Vázquez las mejoras en controversia y que incumplieron dicha obligación. También determinó, a la luz de la prueba que ante sí desfilara, la efectiva realización de las mejoras, en qué consistieron y cuánto dinero se invirtió en su hacer, específicamente, $29,472.10. Según se desprende de la sentencia del foro primario, ésta última determinación se hizo apoyada en cheques cancelados y facturas de compra de materiales, admitidos en evidencia. Consecuentemente, el referido foro condenó a los esposos Huertas-Mojica al cumplimiento específico de la referida obligación contractual.

El Tribunal de Apelaciones revocó al tribunal sentenciador porque no le pareció razonable la versión de que éstos se hubiesen obligado a reembolsar a la señora Collazo Vázquez los referidos $29,472.10. Por su parte, en su comparecencia ante nos, los esposos Huertas-Mojica atacan la prueba sobre la existencia de la obligación contractual, aquella relativa a la realización de las mejoras e, incluso, la prueba que condujo a la determinación de su cuantía. No obstante, su comparecencia padece del mismo déficit que

aquel extremo de la sentencia del foro intermedio apelativo que revocó al foro primario en cuanto a este asunto.

De ordinario, en ausencia de error manifiesto, pasión, prejuicio o parcialidad, a los tribunales apelativos les está vedado intervenir con las determinaciones de hechos, basadas en la credibilidad, que imparte el juzgador.[37] Es norma trillada que tales determinaciones merecen gran deferencia de parte de los tribunales apelativos. En obediencia a esta norma de derecho, no deben descartar arbitrariamente ni sustituir las determinaciones del foro primario por su propio criterio, formado a base de un expediente mudo y frío, a no ser que las mismas carezcan de fundamento suficiente en la prueba presentada.[38]

El Tribunal de Apelaciones sustituyó las determinaciones del Tribunal de Primera Instancia en relación a la existencia de la obligación contractual, la realización de las mejoras y su costo, por su propia concepción de las alegaciones, de la prueba y de lo que era justo y razonable, sin hacer señalamiento alguno demostrativo de que dicho foro incurriera en error manifiesto, pasión, prejuicio o parcialidad. Incidió al no concederle deferencia a las determinaciones de hechos del Tribunal de Primera Instancia.

Los esposos Huertas-Mojica no tienen una obligación nacida de la ley frente a los peticionarios por las

---

[37] Pueblo v. Narváez, 122 D.P.R. 80, 91 (1988) y Pueblo v. Maisonave, 129 D.P.R. 49 (1991).

[38] Pueblo v. Maisonave, supra, pág. 62.

mejoras que su causante, y demandante original en el pleito, señora Collazo Vázquez, introdujo a la residencia en cuestión. No obstante, contrajeron con la finada una obligación de naturaleza contractual que ahora no pueden eludir.[39] Esa obligación nació del ejercicio autónomo de su voluntad. En vista de que la referida obligación no resulta contraria a las leyes, la moral ni el orden público, están compelidos a cumplirla.

En este caso, el contrato es la ley entre las partes. La obligación de reembolsar el dinero invertido en las mejoras en controversia tiene que ser ejecutada a su tenor, pues su validez y cumplimiento no está al sólo arbitrio de los recurridos como parte contratante. Militan en apoyo de esta conclusión los discutidos principios de la autonomía de la voluntad contractual y de la inalterabilidad del contenido del contrato.

III

Por todo lo anterior, estamos conformes con la sentencia que hoy emite el Tribunal. Concluimos que incidió el Tribunal de Apelaciones al revocar aquella parte de la sentencia del Tribunal de Primera Instancia que condena a los recurridos a reembolsar a los peticionarios $29,472.10, por concepto de mejoras efectuadas a la residencia adquirida por los primeros, mediante compra al licenciado José Antonio Casillas

---

[39] "Las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia, artículo 1042 del Código Civil, 31 L.P.R.A. sec. 2992.

Fernández, sita en la Urbanización San Benito del municipio de Humacao.


                              *Efraín E. Rivera Pérez*
                                 *Juez Asociado*



                EN EL TRIBUNAL SUPREMO DE PUERTO RICO



   Nayri L. Collazo Vázquez
    Demandante-peticionario


         v.                                        *Certiorari*
                               CC-2005-384

Roberto   Huertas   Infante,
Milka Mojica del Toro y la
Sociedad      de      Bienes
Gananciales que componen
     Demandados-recurridos



Opinión Concurrente emitida por la Jueza Asociada SEÑORA FIOL MATTA


        En San Juan, Puerto Rico, a  14 de mayo de 2007.

        Coincido con la determinación mayoritaria qu[e] ordena a los recurridos reembolsar a lo[s] peticionarios los gastos incurridos por su causant[e] en las mejoras que hizo al inmueble propiedad de lo[s] recurridos.  Me parece, sin embargo, que el Tribuna[l] desaprovecha la oportunidad de determinar lo[s] derechos de un optante que posee y mejora el inmuebl[e]

objeto del contrato de opción de compra, frente a

tercero que finalmente lo adquiere. Ello requier

examinar la figura del optante que adviene poseedo

del bien opcionado, así como nuestra jurisprudenci

en torno a la naturaleza jurídica del derecho

indemnización dispuesto por los artículos 297 y 38

de nuestro Código Civil.

I

La controversia que desemboca en el litigio que hoy resolvemos comenzó con un contrato verbal de opción de compra entre el Lcdo. José Antonio Casillas Fernández y la Srta. Nayrí Collazo Vázquez. Mediante dicho negocio jurídico el Lcdo. Casillas Fernández se obligó a venderle a la Srta. Collazo un bien inmueble de su propiedad por el precio convenido de $171,000.00.

Según las determinaciones de hechos del Tribunal de Primera Instancia, la Srta. Collazo entregó al Lcdo. Casillas $30,000.00, cantidad que sería abonada al precio de compraventa. El Lcdo. Casillas, en consideración a este pago, entregó la posesión del bien a la Srta. Collazo para que le efectuara mejoras con su absoluta aquiescencia. Por tal razón, la Srta. Collazo llevó a cabo **una "reconstrucción y remodelación"** [40] en la cocina, baños, puertas y pisos de la casa, inclusive hizo **variaciones estructurales y ampliaciones a la propiedad.** Eventualmente, el Lcdo. Casillas vendió el inmueble a los recurridos por el precio de $177,000.00, con la anuencia de la Srta. Collazo.

La Srta. Collazo demandó a los recurridos en cobro de dinero y enriquecimiento injusto. Adujo en su demanda que mediante un acuerdo verbal, y antes de la compraventa del

---

[40] El Tribunal de Primera Instancia calificó de esta manera el proyecto de construcción que llevó a cabo la Srta. Collazo.

inmueble, los recurridos se comprometieron tanto a restituirle los $30,000.00 que ella entregó como adelanto del precio al Lcdo. Casillas, como a resarcirle por las mejoras que ella efectuó en la propiedad. Además alegó que los $30,000.00 adelantados por ella están incluidos en el precio pagado por el matrimonio recurrido al Lcdo. Casillas a cambio del bien inmueble antes descrito. Los recurridos negaron la existencia del pacto verbal, y arguyeron que no se subrogaron en los derechos de la Srta. Collazo, pues pagaron $177,000.00 por el inmueble, es decir, $6,000.00 adicionales al precio convenido en la opción de compra de la Srta. Collazo.

Tras varios trámites, que incluyeron un Requerimiento de Admisiones contestado fuera de término, el Tribunal de Primera Instancia dictó una "Resolución y/o Sentencia Sumaria Parcial" en la que ordenó a los recurridos rembolsar a los peticionarios la partida de $30,000.00 que la Srta. Collazo dio al Lcdo. Casillas Fernández como adelanto del precio de compraventa. En cuanto a las mejoras, el tribunal determinó que aún había controversia sobre su naturaleza y la cuantía correspondiente al resarcimiento, por lo que ordenó la celebración de una vista para dilucidar exclusivamente este asunto.

Celebrada la vista, el recurrido, Roberto Huertas Infante aceptó haber visto la propiedad durante el proceso de remodelación y antes de comprarla. Por su parte, los peticionarios presentaron una serie de cheques

cancelados y facturas que el Tribunal utilizó para establecer la cuantía de las mejoras incorporadas como parte de la reconstrucción y remodelación. El Tribunal de Primera Instancia le confirió entera credibilidad a la prueba de los peticionarios, por lo que concedió las partidas reclamadas por dicha parte. La decisión final del foro de primera instancia se basó en el Requerimiento de Admisiones que se dio por admitido, en el acuerdo verbal entre la Srta. Collazo y los recurridos y en los principios generales del enriquecimiento injusto.

Apelada la decisión, el Tribunal de Apelaciones acogió los planteamientos de los recurridos y desestimó la demanda. Particularmente, en cuanto a la partida de $30,000.00 que la Srta. Collazo había dado en adelanto al Lcdo. Casillas, el Tribunal de Apelaciones señaló como dato importante que los recurridos habían pagado una cantidad mayor al precio opcionado por la peticionaria como precio de compraventa. Concluyó el tribunal apelativo que el Lcdo. Casillas retuvo para sí los $30,000.00 del adelanto, ya que según la escritura de compraventa y su propio testimonio éste no le acreditó dicha cantidad a los recurridos, y éstos no se subrogaron en el lugar de la peticionaria. Además, el Tribunal determinó que el Tribunal de Primera Instancia había errado al resolver dicha controversia utilizando el mecanismo de la Regla 33 de las de Procedimiento Civil, *supra*, en contravención a lo resuelto por este Tribunal

en Audiovisual Language v. Sist. Est. Natal Hnos, 144 D.P.R. 574 (1997).

En cuanto a la partida concerniente a las mejoras, decretó el Tribunal de Apelaciones que de acuerdo al artículo 287 del Código Civil, 31 L.P.R.A. sec. 1131, y en virtud del derecho de accesión allí conferido, no procedía dicho pago. El foro apelativo determinó que el Lcdo. Casillas, como titular de la propiedad al momento en que se hicieron las mejoras, tenía derecho a hacerlas suyas. Por eso los recurridos tampoco estaban obligados a pagarle a los peticionarios por las mejoras hechas por la Srta. Collazo.

Presentada la solicitud de *Certiorari* ante este Tribunal, ordenamos a los recurridos mostrar causa por la cual no debíamos revocar esta porción del dictamen del foro apelativo. Al igual que determina la mayoría en la Sentencia dictada hoy, entiendo que el foro apelativo erró en su apreciación; a continuación explico los fundamentos jurídicos de mi conclusión

## II

El caso de autos nos requiere resolver si una optante que hace mejoras al inmueble opcionado mientras está en su posesión tiene el derecho a ser resarcida por dichas mejoras frente a un tercero adquirente. Contestar esta interrogante precisa un estudio sobre los conceptos de accesión y posesión y su relación con la figura del optante en nuestro ordenamiento jurídico.

Desde las postrimerías del siglo XIX, Q. M. Scævola comentaba que no es labor baladí, sino más bien trabajo espinoso "especificar, en armonía con cada caso concreto, las consecuencias de la posesión en lo concerniente a la percepción de los frutos, a la indemnización de los gastos necesarios, al resarcimiento de las mejoras útiles, etc." El ilustre comentarista encontró en esta figura "caracteres ambiguos", "anfibología jurídica", "nebulosidad en las doctrinas", y hasta "cierta promiscuidad entre la posesión y otras instituciones por lo que atañe a sus elementos integrales." Véase de dicho autor su Código Civil comentado y concordado extensamente, Madrid, Imprenta de Ricardo Rojas, 1893, tomo VIII, págs. 43-44. Por su parte, José María Manresa y Navarro, en sus comentarios, dijo que "la posesión constituye uno de esos pasos difíciles en los que el viajero agota sus fuerzas físicas, como el legislador y el jurisconsulto sus fuerzas intelectuales, sin estar por eso seguro de escapar con bien en su difícil empresa." Manresa, Comentarios al Código Civil español, 7ma ed., Madrid, Reus, 1972[41], tomo IV, págs.5-6.  En un tono más optimista, y en torno al tema abordamos, José Ángel Torres Lana en su libro sobre el Contrato y derecho de opción, 2da ed., Madrid, Trivium, 1987, califica "[l]a

---

[41] Texto citado con aprobación en varias de nuestras opiniones. E.g. Vélez López v. Izquierdo Stella, 2004 TSPR 92; Mayagüez Hilton Corp. v. Betancourt, 2002 TSPR 23, 2002 JTS 29; Atocha Thom McAn Inc. v. Registrador, 123 D.P.R. 571 (1989).

entrada del optante en posesión del objeto del contrato" como "uno de estos supuestos que denotan la viveza actual del fenómeno posesorio". A estos menesteres debemos dedicar nuestra atención hoy.

Como afirma Concepción Rodríguez Marín "[l]os supuestos de accesión por incorporación en suelo ajeno son, por hipótesis, actos posesorios que sacan a la luz toda problemática que envuelve a una institución como es la posesión." Rodríguez Marín, Liquidación de gastos con ocasión de la tenencia de una cosa, Barcelona, J.M. Bosch, S.A., 1994, pág. 56. Al igual que el Código Civil español, nuestro Código considera la accesión como una "facultad derivada del dominio" basada en la máxima de que lo accesorio sigue a lo principal (accessorium sequitur principale). Véase J. Santos Briz, Tratado de derecho civil, Barcelona, Bosch, 2003, tomo II, pág. 145. Con ello se apartó tanto del derecho romano como de las Siete Partidas y el derecho francés, donde la accesión es considerada como una de las maneras de adquirir la propiedad. [42] C. Valverde y Valverde, Tratado de derecho

---

[42] La Tercera Partida, que habla sobre la justicia y de cómo juzgar ordenadamente en cada situación litigiosa, aborda en su Título XXVIII el régimen de indemnización en casos de construcción de buena fe en terreno ajeno. La Ley XLI de dicho Título es el antecedente de nuestro artículo 297, y establece que la indemnización en la accesión se da en el caso de obras nuevas. La Ley XLIIII del mismo Título es el antecedente de nuestro artículo 382 y establece que en el caso de indemnización al poseedor de buena fe, la indemnización es por reparaciones o renovaciones de lo ya existente. Como he discutido, el legislador español optó por apartarse de

civil español, 4<sup>ta</sup> ed., Valladolid, Talleres Tipográficos Cuesta, 1936, Tomo II, pág. 93.

Por virtud del derecho de accesión, y el principio de que la superficie cede al suelo (*superficies solo cedit),* el titular de un bien inmueble (*dominus soli*) puede hacer suyas las **mejoras**, los frutos y las edificaciones en él efectuadas. El artículo 287 del Código Civil establece que la propiedad de los bienes, ya sean muebles o inmuebles, lleva consigo el derecho, por accesión, **a todo** lo que ellos producen o se les une o incorpora, natural o artificialmente, 31 L.P.R.A. sec. 1131. De acuerdo al régimen de la llamada accesión industrial inmobiliaria, el artículo 294 prescribe que lo edificado, plantado o sembrado en predios ajenos **y las mejoras o reparaciones hechas en ellos**, pertenecen al dueño de los mismos, 31 L.P.R.A. sec. 1161.

Refiriéndose al artículo homólogo español, Mariano Alonso Pérez resalta que el legislador se apartó de los precedentes históricos de la accesión industrial inmobiliaria al regular el concepto de la edificación junto al de la plantación y la siembra. [43] <u>Comentarios al</u>

---

este régimen, pues en el ordenamiento civil español la accesión es una extensión del dominio, por virtud de ella no sea adquiere algo nuevo, sino una extensión de lo que ya es propio. Según Manresa, aunque las Siete Partidas se acepten como antecedentes del articulado de accesión, el Código Civil español simplificó y mejoró el "casuismo" que en ellas se manifestaba. Manresa, *op. cit*. Tomo III, pág. 208.

[43] En un principio, nuestro artículo 297 era idéntico al artículo 361 español. Pero tras la aprobación de la Ley

<u>Código Civil y compilaciones forales</u>, 2^{da} ed., Madrid, Ed. Rev. Der. Priv., 1990, Tomo V, Vol. I, pág. 323-327. Declara Mariano Alonso Pérez que en virtud de la accesión:

> ...se unen a la propiedad del suelo ajeno **todas las reparaciones y mejoras**, según el viejo principio de la accesión afectante a *omnis materia, ex qua aedificium constat. Op. cit.*, pág. 324. (Énfasis nuestro)

El citado autor concluye que el articulado sobre accesión industrial inmobiliaria opera en las reparaciones y renovaciones de los bienes inmuebles ajenos. Para Alonso Pérez,[44]

> ...la exclusión de la accesión en el supuesto de alteraciones o construcciones sobre obras o edificios preexistentes no encuentra apoyo en los preceptos del Código Civil... es indiferente que se trate de una obra nueva en su totalidad o que sea una reedificación o una mera reparación de otra existente o una ampliación de la misma… En cualquier caso, no tiene mucho sentido excluir las reparaciones y obras parciales, cuando el artículo 358 del Código Civil se pronuncia con una extensión manifiesta, añadiendo a "lo edificado, plantado o sembrado… **las mejoras o reparaciones**…" De este modo, el Código Civil acoge un concepto de accesión expresamente lato, desde el punto de vista cuantitativo. *Op. cit.* pág. 326. (Énfasis nuestro)

---

núm. 56 del 16 de junio de 1964, se enmendó dicho artículo y se estableció un método separado para calcular el monto de la indemnización debida al edificante de buena fe. Sin embargo, la enmienda se hizo por razones de justicia socioeconómica, por lo que la configuración jurídica del artículo permanece análoga al homólogo español.

[44] Alonso Pérez indica que está de acuerdo con las ideas de Serrano Alonso expuestas en <u>La accesión de mueble a inmueble: una interpretación del artículo 361 del Código Civil</u>, R.D.P., 1981, págs. 676-677.

En su comentario al artículo 358 español (artículo 294 nuestro), Scævola explica este concepto lato de la siguiente manera:

> **Las mejoras o reparaciones hechas en los predios se equiparan a las tres formas mencionadas de accesión, edificación, plantación y siembra**, porque en ellas se significa con evidencia el carácter de accesorios de la tierra en que se llevan a cabo. Aunque no aparecen citadas en los demás artículos y sólo se las incluye en el principio general del artículo 358, creemos que en cuanto a las modalidades que con motivo de su incorporación al suelo pueden presentar, **están sujetas al mismo régimen legal de las segundas**. *Op. cit*. Tomo VI, pág. 557. (Énfasis nuestro)

De acuerdo a nuestro artículo 295, **todas las obras**, siembras y plantaciones se presumen hechas por el propietario y a su costa, mientras no se pruebe lo contrario. 31 L.P.R.A. sec. 1162. Cuando Scævola comenta el artículo 359 del Código Civil español (artículo 295 nuestro) afirma que:

> Si bien no cita el artículo 359 las mejoras o reparaciones hechas en los predios, inútil parece decir que **deben incluirse en el espíritu general que a aquél informa**, como ya tenemos advertido al estudiar el artículo 358, porque además igualmente debe presumirse que son del dueño del suelo en que se han practicado, presunción cuya razón de ser es la misma que aplicamos a las obras, siembras y plantaciones. *Id*. pág. 558.

Angel Carrasco Perera, en su libro <u>"Ius ædificandi" y accesión</u>, 1ra ed., Madrid, Montercorvo, S.A., 1986, pág. 141, cita la jurisprudencia del Tribunal Supremo de España para probar "que la aplicación de las normas reguladoras de la construcción en suelo ajeno **nunca ha**

**dependido de que estuviésemos en presencia de un determinado tipo de labor de fábrica.**" (Énfasis nuestro.) El autor cita la Sentencia del Tribunal Supremo de España del 27 de marzo de 1958, que establece que **las obras de reparación** que se realizan a propias expensas en la casa del padre de la novia pueden repetirse, una vez frustrados los proyectos de matrimonio. Carrasco Perera también recurre a la Sentencia del mismo foro, fechada 27 de noviembre del 1978, donde según el autor, se establece que es objeto de accesión la instalación de parquet en suelo ajeno.[45]

Explicada la doctrina, examinemos si nuestra jurisprudencia circunscribe la aplicación de la normativa sobre accesión y construcción en suelo ajeno a algún tipo determinado de mejora. Ha quedado establecido en nuestra jurisprudencia, que la accesión

> "…no se limita a edificaciones de carácter sustancial y permanente tales como edificios, viviendas, rellenos, muros de contención y canales de riego, sino que se da inclusive con respecto de otras obras y mejoras, como las de alumbrado, ascensores y servicio de agua, hornos, depósitos y cobertizo; lavaderos, fuentes y abrevaderos". Sucesión Echegaray v. Esso Standard Oil Co., 87 D.P.R. 825, 830-834 (1962); Scævola, Código Civil, 5ta. ed., tomo VI, págs. 581-583; Manresa, Comentarios al Código Civil Español, 7ma. ed., tomo III, pág. 260; Puig Peña, Tratado de Derecho Civil Español, tomo III, vol. 1,

---

[45] Además de las aquí mencionadas, el autor cita la Sentencia del 3 de enero de 1905, donde según el autor se considera objeto de la accesión la colocación de una máquina unida al suelo de manera indisoluble y la Sentencia del 10 de diciembre de 1980, donde según el autor, la accesión se da por la realización de pasos y caminos, similar es el caso de la Sentencia del 20 de mayo del 1977.

pág. 129, escolio 24; Sentencia del Tribunal Supremo de España de 18 de diciembre de 1956.

Es decir, en nuestro ordenamiento, todo tipo de mejora es objeto de accesión.

En nuestra jurisdicción, para que se produzca la accesión no es necesario que el objeto situado en el inmueble haya adquirido el carácter de inmueble, adhiriéndose a la propiedad de manera que no pueda separarse de ella sin quebrantamiento o deterioro. Por lo tanto, aún las mejoras útiles que pueden ser retiradas sin menoscabo del inmueble pueden ser objeto de la accesión a elección del dueño del inmueble. Sucesión Echegaray v. Esso Standard Oil Co., *supra*; R. Efrén Bernier, El derecho de accesión en Puerto Rico, Barcelona, Imp. Vda. de Daniel Cochs, 1970, pág. 62.

Respecto al concepto de edificación, Alonso Pérez se refiere a la definición de Sanz Fernández[46] quien dijo que una edificación es "toda unión material de bienes muebles a un inmueble por la acción de hombre [*sic*.] mediante cualquier clase de obra o construcción". Ya en Freyre v. Blasini, 68 D.P.R. 211 (1948) habíamos considerado como edificación hecha de buena fe un horno nuevo construido por unos arrendatarios que contaban con el consentimiento de sus dueños.

---

[46] Alonso Pérez se refiere al trabajo de Sanz Fernández titulado Edificación en suelo ajeno: sus problemas, "Curso de conferencias 1947 en el Ilustre C.N. de Valencia" Valencia, 1948, pág. 121.

A pesar de su amplitud, el derecho de accesión de las obras en suelo ajeno no es absoluto, se reconoce con sujeción a ciertos derechos concedidos a quienes obran en virtud de la buena fe. Por ello, desde 1913, nuestra jurisprudencia estableció el principio de que el dueño de la tierra, por ese solo hecho, no es el único y legítimo dueño de una edificación construida de buena fe en el terreno de su propiedad. Berrocal v. Tribunal de Distrito, 76 D.P.R. 38, 52-53 (1954), citando a Pueblo v. Municipio de San Juan, 19 D.P.R. 656, 668 (1913); Véase Op. Sec. Just. Núm. 9 de 1957.

Los artículos relacionados a la accesión como facultad del dominio establecen el sistema general que regula las obras efectuadas en suelo ajeno. Según estos preceptos, no es requisito que la persona que realiza la obra objeto de la accesión y que tiene derecho a ser indemnizada sea un poseedor, siempre que tenga buena fe. El Código Civil solo considera la buena o mala fe al momento de edificar para determinar la indemnización correspondiente. Sucesión de María Echegaray Vda. de Viera v. Esso Standard Oil Company, 87 D.P.R. 825 (1963). Ver además Manresa, Comentarios al Código Civil español, 5$^{ta}$ ed., Madrid, Reus, 1920, tomo III, págs. 208-211 y Scævola, Código Civil comentado y concordado extensamente, 5ta. ed., Madrid, Reus, 1949, tomo VI, págs. 580-581.

Nuestra tradición civilista reconoce una bifurcación entre el dominio y propiedad de un bien y la posibilidad de la posesión. Por eso, al abordar el tema de las obras construidas de buena fe en propiedad ajena, el Código Civil plasmó un régimen de mejoras aplicable al caso particular de la posesión. En el caso que un edificante de buena fe sea también poseedor de buena fe, al momento de indemnizarle le aplican las disposiciones especiales sobre la indemnización del capítulo sobre posesión. Lo mismo es cierto del mejorante de buena fe, según hemos explicado, ello es importante dado que la accesión condiciona los derechos de los edificantes sólo a su buena o mala fe, mientras que en la posesión se establece un régimen particularizado de indemnización, cuyas disposiciones varían de acuerdo a la naturaleza de las obras, aunque se toma en consideración la buena o mala fe.

El artículo 360 nos da las definiciones de las dos acepciones del término "posesión" reconocidas en el derecho civil. Según dicho artículo, posesión natural es la tenencia de una cosa o el disfrute de un derecho por una persona, mientras que posesión civil es esa misma tenencia o disfrute, unidos a la intención de haber la cosa o derecho como suyos. 31 L.P.R.A. sec. 1421.

Como explica Francisco Bonet Ramón, toda tenencia- *corpus*- es una posesión natural, pero cuando le acompaña la intención- *animus-,* la posesión es civil. Esa

intención es para el comentarista elemento integral de la posesión civil (*possesio civilis*), y sugiere que "debemos traducirle, con sujeción a las ideas desarrolladas por nuestro Código, como *animus domini*, lo que significa tanto como poseer la cosa en concepto de dueño o el derecho en concepto de titular del mismo." F. Bonet Ramón, <u>Código Civil de España comentado</u>, Madrid, Aguilar, 1962, pág. 386. La posesión considerada como derecho, es decir, la posesión civil[47], tiene a su favor determinadas defensas que le presta el Ordenamiento y que hacen que, en tal forma concebida, a la posesión se le considere un derecho real provisional. José Ramón Vélez Torres, <u>Curso de derecho civil</u>, 4$^{ta}$ ed., Madrid, Offirgraf, 2002, tomo II, pág. 117.

Federico Puig Peña menciona las consecuencias jurídicas del derecho de la posesión, y expresa que los autores discuten sobre si se trata de un derecho real o personal, a lo que acepta el autor que:

> …va ganando terreno la doctrina que abiertamente admite la existencia de un derecho real (dada la inmediativad [*sic*.] de la relación de [las personas] con la cosa); siquiera, como afirma Castán, estemos ante un derecho real de naturaleza especial, dada la protección meramente provisional que se le dispensa. <u>Tratado de derecho civil español</u>, 1$^{era}$ ed., Madrid, Revista de Derecho Privado, 1972, tomo III, vol. I, pág. 31.

Según el artículo 293 de nuestro Código Civil, es poseedor de buena fe el que posee como propietario por virtud de un título suficiente en sus términos y

---

[47] Partimos de una distinción entre lo que es la posesión como hecho, que es la llamada posesión natural, y la posesión como derecho, que es la posesión civil.

condiciones para transferir la propiedad y cuyos defectos son ignorados por el poseedor. 31 L.P.R.A. sec. 1146. La posesión de buena fe cesa desde el momento en que el poseedor conoce por sí mismo los defectos del título, o mediante el juicio que estableciere el propietario de la cosa para reivindicarla. No hay posesión de buena fe cuando la misma no se ampara en un título o acto jurídico que aparente una legítima adquisición o cuando el poseedor no ignora los vicios que invalidan o hacen ineficaz esa adquisición. Cedó v. Laboy, 79 D.P.R. 788 (1956).

En cuanto a la relación entre posesión y dominio, el artículo 392 expresa que los actos relativos a la posesión, ejecutados o consentidos por el que posee una cosa ajena como mero tenedor para disfrutarla o retenerla en cualquier concepto, no obligan ni perjudican al dueño de la cosa, a no ser que éste hubiese otorgado a aquél facultades expresas para ejecutarlos o los ratificare con posterioridad. 31 L.P.R.A. sec. 1478.

En tales casos aplica el artículo 297 cuando establece que el dueño del terreno en que se edificare de buena fe, tendrá derecho a hacer suya la obra mediante el pago al edificante del costo de los materiales y la mano de obra, o el costo de reproducción de la misma al momento en que el dueño del terreno ejercitare su derecho, deduciendo la depreciación, lo que resultare mayor o a obligar al que fabricó a pagar el precio del terreno. 31 L.P.R.A. sec. 1164. Es imperativo mencionar

que nuestra jurisprudencia le ha conferido a dicha opción del propietario un carácter real, pues como requisito para la accesión, es también una facultad derivada del dominio, es decir, una potestad de la condición de *dominus soli*. Berrocal v. Tribunal*, supra*, pág. 57.

Ignacio Sierra Gil de la Cuesta en su Comentario del Código Civil, 1^{era} ed., Barcelona, Bosch, 2000, tomo III, págs. 156-157, esboza las dos teorías preeminentes respecto a la naturaleza y alcance del artículo 297. Por un lado presenta la tesis del dominio separado del incorporante, previo a que el propietario ejercite la opción que le confiere el artículo al *dominus soli*. Por otro lado, el autor expone la tesis de la accesión automática "en el sentido de que lo edificado, plantado o sembrado en suelo ajeno pertenece al propietario de éste desde el instante mismo en que tiene lugar la unión o incorporación". Según Sierra Gil de la Cuesta, la jurisprudencia española se inclina por la primera teoría, y le llama "accesión en expectativa y no consumada". Ver sentencias del Tribunal Supremo de España del 23 de marzo de 1943, 13 de marzo de 1948, 17 de diciembre de 1957, 17 de junio de 1971, 20 de mayo de 1977. La jurisprudencia patria se ha influenciado por la misma inclinación doctrinaria como veremos más adelante.

En nuestro sistema civilista, el principio de *superficies solo cedit,* derivado del principio de *accessorium sequitur principale,* se manifiesta de

manera particular en este artículo 297. La letra del precepto demuestra que, en el caso especial en que haya un poseedor y edificante de buena fe, el principio de *superficies solo cedit* no establece una accesión automática de las mejoras, pues el dueño del suelo puede adquirir lo edificado en su propiedad por un poseedor y edificante de buena fe **"previo** el pago al dueño de la obra" de la indemnización correspondiente. Artículo 297, 31 L.P.R.A. sec. 1164 (Énfasis suplido.)

Las mejoras no acceden al terreno automáticamente, sino que pertenecen al poseedor y edificante de buena fe hasta tanto el propietario del terreno le indemnice. Como dijéramos en Berrocal v. Tribunal, *supra,* págs. 62-63, mientras no pague los materiales y la mano de obra, el dueño del suelo no adquiere el dominio de lo edificado. Al así decidir usamos como fundamento la Sentencia del Tribunal Supremo de España del 2 de enero de 1928. Esta Sentencia española, según comentada por Puig Brutau, en sus Fundamentos de derecho civil, 2da ed., Barcelona, Bosch, tomo III, vol. 1, págs. 404-405, declaró, al igual que las Sentencias del 27 de noviembre de 1902 y 21 de mayo de 1928, que mientras no tenga efecto la indemnización a que se refiere nuestro artículo 297, el dueño del predio no adquiere el dominio de lo edificado, sembrado o plantado. Puig Brutau se remite también a la Sentencia del 18 de marzo de 1848, que estableció, con respecto a los equivalentes españoles de nuestros

artículos 297 y 382, que "no sólo en su sentido literal, sino atendiendo al espíritu que lo informa", se llega a la conclusión de que "mientras el pago de la indemnización no tenga efecto, no ostenta el dueño del predio el dominio de lo edificado".

Para ilustrar la discusión del tema en épocas más recientes, Sierra Gil de la Cuesta, *op. cit.*, pág., 130, se refiere a la Sentencia del 31 de diciembre de 1987, donde se reitera el principio contrario a la accesión automática. El autor explica que:

> …mientras la indemnización no tenga efecto, no ostenta el dueño del predio el dominio de lo edificado, y por el contrario, el que edificó de buena fe tiene el derecho de retención establecido en el art. 453 [artículo 382 nuestro]… puesto que… la figura de la accesión no provoca en caso de buena fe declarada sin más y por la sola constancia de lo edificado de un desplazamiento patrimonial sino mediante la opción determinada en el art. 361 [297 nuestro]. Sierra Gil de la Cuesta, *op. cit.* pág. 159.

En <u>Berrocal v. Tribunal</u>, *supra*, págs. 54-57 comentamos al respecto del artículo 297 que:

> … el dueño del terreno puede hacer suya la obra, plantación o siembra: luego no es suya inmediatamente, no es suya todavía. ¿De quién es entonces? ¿De quién la puede reclamar el dueño? Sin duda del tercero, porque del tercero es; y para que este tercero deje de ser dueño, hay que indemnizarle en una forma o en otra, según haya obrado de buena o mala fe… En este punto concreto, y por lo que al Código Civil español respecta,
>
> creemos más en lo firme la interpretación del señor Navarro Amandi, quien dice que hay que afirmar la propiedad del que edificó o plantó, lo mismo que la propiedad del dueño del suelo. Pero que como se trata de dos derechos de propiedad en conflicto, la ley resuelve en favor de uno de los propietarios, bien según la regla de que lo accesorio sigue a lo principal, o en atención a la buena o mala fe...

Es indudable, y responde a toda la estructura lógica del Código, que el edificante de buena fe es el que posee el título de dominio de la edificación hasta tanto el dueño del suelo haga uso del derecho optativo que le concede el artículo 297 de nuestro Código, y le pague al propietario de la edificación, los materiales y la mano de obra empleados en dicha edificación o lo obligue a comprarle el suelo. Mientras esa indemnización no se pague no pasa al dueño del suelo el título de dominio del inmueble construido, y por el contrario, el edificante de buena fe posee no sólo el título de dominio sobre la edificación, sino también, el derecho potencial de convertirse en dueño del suelo.

Así quedó establecido en nuestra jurisprudencia el derecho propietario que tiene el edificante de buena fe sobre las mejoras que efectúe en propiedad ajena. Los gastos que deberá abonar el propietario del suelo para adquirir las mejoras del edificante de buena fe cuando es poseedor de buena fe quedan preceptuados en el artículo 382, 31 L.P.R.A. sec. 1468, que se refiere particularmente a los gastos necesarios y útiles. A esos efectos dispone el Código que mientras los gastos necesarios se abonan a todo poseedor, los útiles sólo se abonan al poseedor de buena fe, pudiendo optar el que le hubiese vencido en la posesión por satisfacer el importe de los gastos o por abonar el aumento de valor que por ellos haya adquirido la cosa.

Scævola define los gastos útiles como "los que poniendo la cosa en condiciones de procurar más provecho, más comodidad, más frutos o más interés, aumentan su valor." Scævola, *op. cit*. pág. 415. El autor explica que:

…aún cuando estos gastos [útiles] no afectan la sustancia de la cosa, revelan un propósito digno de elogio, cual es el de aumentar su valor o

su producto, de ahí que se conceda al que de buena fe los hizo, el derecho a reclamar su importe. Pero ya no se trata de un gasto impuesto por la necesidad; la voluntad del poseedor es un factor decisivo… Scævola, *supra*, p. 424.

Habla el tratadista de una "consideración cariñosa" que guarda el Código Civil hacia el poseedor de buena fe como la motivación para conceder el remedio de la indemnización por gastos no necesarios, como lo son las mejoras útiles.  Si en el artículo 297 se establece un derecho del propietario a adquirir las mejoras mediante el pago de los gastos incurridos por un poseedor de buena fe, en el artículo 382 se presenta el pago de gastos por mejoras desde la perspectiva de los principios básicos de buena fe y del enriquecimiento injusto, pues las mejoras son propiedad del poseedor y edificante hasta tanto se le indemnice.

Comenta Angel Carrasco Perera que entre los artículos 297 y 383, existen unas evidentes relaciones. El autor es de la opinión que no hay diversidad de espacios normativos entre el régimen de accesión por **construcción** en suelo ajeno y la doctrina general de la

**indemnización por mejoras**, o impensas, como también le llama la doctrina.  Dice el autor que:

"…ya de momento, la remisión efectuada por el artículo 297 al régimen de las impensas posesorias deja claro que **la posición de quien construye en suelo ajeno de buena fe es idéntica a la de quien posee indebidamente la finca ajena y en ella realiza mejoras de buena fe.** Mientras las normas de accesión se formulan aparentemente desde el lado del *dominus soli*, como una supuesta técnica adquisitiva, el régimen de las impensas posesorias elige la faceta

pasiva, la situación del poseedor mejorante y su correspondiente derecho de indemnización. Carrasco Perera, "Ius ædificandi" y accesión, 1ra ed., Madrid, Montercorvo, S.A., 1986,. págs. 127-142. Énfasis suplido.

Como dijéramos en E.L.A. v. Tribunal Superior, 94 D.P.R. 157 (1967), dado el principio de la buena fe, dichos artículos tienen su solución de justicia en la indemnización. Puig Brutau, en sus Fundamentos de derecho civil, 2da ed., Barcelona, Bosch, 1971, tomo III, vol. I, págs. 115-116, así lo entiende al afirmar que "estos preceptos tratan de evitar que el sucesor en la posesión (ordinariamente el propietario de la cosa) experimente un enriquecimiento injusto a costa del poseedor".[48]  Este tribunal, en el caso de Marchand v. Montes, 78 D.P.R. 131 (1955) adoptó el pensamiento que José Castán Tobeñas expresó en su obra sobre Derecho civil español, común y foral, 7ma ed., Madrid, Reus, 1949, Tomo I, pág. 622, al respecto de que "los gastos y mejoras revisten especial relevancia e interés para el derecho cuando son hechos sobre cosa ajena, pues producen en tal caso, a virtud de los principios del enriquecimiento, determinados derechos de reembolso y de garantía a favor del mejorante."

Ha quedado establecido en nuestra jurisdicción que quien construye en terreno ajeno de buena fe, en virtud

---

[48] El concepto del enriquecimiento injusto está disperso en el articulado del Código Civil, y es uno de los principios fundamentales que lo informan.  Así lo recalcamos en Silva v. Comisión Industrial de Puerto Rico, 91 D.P.R. 891 (1965).  Véase Guaroa Velázquez, Las Obligaciones según el derecho puertorriqueño (1964) en la pág. 133, donde el autor apunta, como ejemplo de lo anterior, los artículos relativos a la accesión y la posesión.

del permiso que le concedió un anterior dueño, tiene derecho a que se le pague el importe de los materiales invertidos en la construcción así como el montante de la mano de obra. Ramos v. Pueblo, 70 D.P.R. 619 (1949). Ver además Sucrs. Ramos Muñoz v. Apollo Hardware, 110 D.P.R. 855, 859 (1981); Castro Anguita v. Figueroa, 103 D.P.R. 847, 851 (1975); C.R.U.V. v. Román, 100 D.P.R. 318, 322-323 (1971); E.L.A. v. Tribunal Superior, *supra*, págs. 162-163 (1967); Cesaní Vargas v. Tribunal Superior, 92 D.P.R. 239, 244-245 (1965); Toro v. Mojica, 79 D.P.R. 630, 633 (1956); Berrocal v. Tribunal de Distrito, *supra*, a las págs. 38, 60-61; Viera v. Arizmendi, 74 D.P.R. 38, 48 (1952); Echegaray v. Tribunal de Distrito, 72 D.P.R. 445, 447-448 (1951).

En Quiñones Jiménez v. Gilberto Alcaide Arroyo, 72 D.P.R. 718, (1951), resolvimos que el derecho que tiene el dueño del terreno de hacer suyo lo construido de buena fe, previo el pago correspondiente, es un derecho que pasa al colindante retrayente al subrogarse éste en los derechos del dueño. Inclusive hemos establecido que el dueño del terreno deberá pagar el importe de los gastos necesarios y útiles al poseedor de la obra, aún cuando éste no fuera quien la hubiera construido originalmente, King v. Fernández, 33 D.P.R. 759 (1924).

III

El derecho del poseedor y edificante de buena fe a recibir la indemnización por los gastos incurridos en

mejoras y el derecho optativo del propietario (*dominus soli*) a adquirir por derecho de accesión todo lo que radique en la superficie de su suelo convergen en los artículos 297 y 382 de nuestro Código Civil. Dada la naturaleza dual de la indemnización de gastos por mejoras, que por un lado se presenta como facultad del domino en el artículo 297, y por el otro como remedio en equidad, en el artículo 383, es difícil conferirle carácter personal o de crédito.

Hace más de medio siglo que rechazamos clasificar el derecho de indemnización del que edifica en suelo ajeno con el consentimiento del dueño como un bien mueble y resolvimos en vez que dicho derecho es un bien inmueble, es decir, que se trata de un derecho real. Berrocal v. Tribunal de Distrito, *supra*. Reiteramos hoy dicha postura, a la vez que aprovechamos la coyuntura del presente caso para profundizar en torno a la naturaleza real del derecho de indemnización del poseedor y edificante de buena fe.

En Berrocal v. Tribunal, *supra*, luego de afirmar que "[l]a ley es siempre la premisa mayor de toda conclusión jurídica", hicimos referencia al artículo 262 de nuestro Código Civil, según el cual "las cosas inmuebles pueden serlo unas por su propia naturaleza y otras por el destino u objeto al cual son aplicables", 31 L.P.R.A. sec. 1042. Nuestra conclusión también se basó en el segundo inciso del artículo 264, pues según su letra "cualquier derecho u obligación constituido sobre una

propiedad inmueble" forma parte de las cosas incorporales que son inmuebles por razón del objeto al cual se aplican, 31 L.P.R.A. sec. 1044.

El Código Civil español no contiene un articulado análogo a nuestros artículos 262 y 264. Estos provienen del Código Civil de Louisiana, para ser específicos, de sus artículos 463 y 471 respectivamente. En los artículos 262 y 264, de forma cónsona con el principio de *numerus apertus* que permea nuestro derecho real e hipotecario[49], nuestro Código Civil incorpora la clasificación francesa[50], que a su vez acepta la regla de que hay cosas incorpóreas que son inmuebles por razón de que aplican a cosas inmuebles. [51]

François Laurent, en su trabajo sobre los <u>Principios de derecho civil francés</u>, (Barroso Hnos. y Comp. Sucesores) 1[era] ed., México, Barroso Hnos. y Comp. Sucesores, 1895, tomo V, pág. 709, se remite al pensamiento de Pothier, quien dijo que los derechos reales inmobiliarios no son más que la heredad misma o un desmembramiento de dicha heredad. Los créditos, al contrario, derivan su naturaleza de muebles o de inmuebles de la cosa que constituye su objeto. Laurent

---

[49] <u>Maeso v. The Chase Manhattan Bank,</u> 133 D.P.R. 196, 202 (1993).

[50] Así le llama Vélez Torres, *op. cit.*, pág. 46.

[51] Scævola califica la formula de nuestros artículos 262 y 264 como una "más adecuada quizá para un trabajo filosófico sobre los bienes". Scævola, <u>Código Civil</u>

<u>comentado y concordado extensamente</u>, 5[ta] ed., Madrid, Reus, 1949, tomo VI, pág. 214.

se refiere al viejo adagio *Actio quae tendit ad inmobile est inmobilis*, y explica que "en definitiva *actio ad inmobile* significa la acción que tiende a adquirir la propiedad de un inmueble." La acción es inmobiliaria cuando el actor tiende a adquirir la propiedad de un inmueble.

Ambrosio Colin y Henri Capitant, en su <u>Curso elemental de derecho civil</u>,(Revista general de legislación y jurisprudencia), [4ta] ed., Madrid, Reus, 1961, tomo II, vol. II, págs. 32-34, describen lo que son, de acuerdo a la doctrina francesa, los "inmuebles por el objeto a que se aplican". Según los autores, "[e]sta clase comprende… los derechos inmuebles que no son la propiedad, pues ésta se confunde, se absorbe en el objeto mismo". Colin y Capitant, *op. cit.* pág. 32. Esta categoría de inmuebles se compone a su vez de dos subdivisiones. La primera la constituyen "los derechos reales distintos de la propiedad que pesan sobre un inmueble", *ibid*. Dentro de estos derechos reales distintos de la propiedad se encuentran los derechos reales principales (i.e. usufructo, uso, habitación, servidumbre, enfiteusis, superficie) y los derechos reales accesorios (i.e. hipoteca, anticresis).

La segunda subdivisión de los inmuebles por el objeto a que se aplican, según la doctrina francesa, la componen los "créditos inmuebles", *ibid*. Los autores aclaran esta aparente contradicción conceptual explicando que si bien un derecho de crédito siempre tiene por

objeto hacer, no hacer o dar una cosa, y se considera por ello casi siempre de naturaleza mueble, cuando la obligación tiene por objeto, no el acto de hacer o dejar de hacer, sino el transferir la propiedad de una cosa, y esa cosa es inmueble, el derecho del acreedor también es inmueble.[52]

Por su parte, el Código Civil español establece, en su artículo 334, análogo al 263 nuestro, un listado de "maneras posibles de ser la propiedad inmueble", indicándonos como dice Scævola, "el criterio o regla de conformidad con los cuales haya de procederse en la clasificación de todos los demás objetos que no estén taxativamente enumerados en el artículo". Véase al respecto Scævola, *op. cit.*, tomo IV, págs. 214-215 y 253-256. El inciso décimo del artículo 263 es el único que se dedica a las cosas incorpóreas que son "inmuebles por analogía", como le llaman los españoles. Distinto a los incisos que le preceden, éste es el más genérico, por lo que demuestra una intención parecida a la del *Code* francés y el Código de Louisiana.

Laurent, atendiendo la situación en que un propietario adquiera un terreno ya mejorado por un poseedor de buena fe a quien el antiguo propietario no ha indemnizado, se hace varias preguntas que luego responde: "¿Con qué titulo promovería el constructor contra el

---

[52] Ya ha advertido Puig Brutau, que los derechos reales y derechos de crédito se hallan en una situación inestable que les impulsa a cierta regresión hacia la figura opuesta. Puig Brutau, *op. cit.*, pág. 14.

antiguo propietario? ¿En virtud de un vinculo de obligación? Jamás lo ha habido. Y no puede perseguirlo como propietario porque ya dejó de serlo." Laurent, *op. cit.*, tomo VI, págs. 417-418.

Carrasco Perera, *op. cit.*, págs. 338-339, explica que un tema muy discutido en la doctrina ha sido el de saber si el derecho de compensación del constructor de buena fe es de naturaleza personal, y por tanto sólo exigible ante el propietario del terreno al tiempo de la incorporación, o si se trata de un derecho real o ambulatorio *propter rem* contra los sucesivos adquirentes de la finca edificada.

El autor opina que no se puede decir que el constructor de buena fe ostente propiamente un crédito para el reembolso de los gastos realizados. Tampoco se puede hablar, "en sede del artículo 361, de una obligación alternativa del *dominus soli*… Son muy distintas las dos situaciones recogidas en [este artículo] para hablar de ellas en términos de alternatividad". Carrasco discute que solo el propietario actual del terreno edificado está en condiciones de ejercer la opción concedida en el citado artículo, y expresa que "[s]i esto es así por lo que atañe al carácter de la opción, igualmente ocurre con la naturaleza no automática de la adquisición." Continúa explicando el autor que:

> El propietario del suelo no adquiere nada por el hecho de la incorporación, de la misma forma que no debe nada; todo se reduce a saber a quien

corresponden las mejoras en el momento de la liquidación posesoria. Obligado a pagar está quien ejercite el derecho del artículo 361, y es claro que éste no puede ser sino el propietario actual.

Carrasco Perera concluye que antes del propietario del terreno ejercer su opción y derecho de accesión de las mejoras mediante la indemnización,

> …no existe deuda, sino ***carga***[53]: ha de pagar antes de adquirir y precisamente para adquirir. No hay *circulación de la obligación*, sino un conjunto de acciones que corresponden a quien es propietario actual del terreno. El constructor que se dirige al propietario actual no le exige el crédito que nació en la cabeza del antiguo dueño, entre otras cosas, porque el constructor solo puede dirigirse contra el dueño "para que éste opte", no para que pague, y sólo el dueño actual está en condiciones de optar, y esto es así porque como ha afirmado la Jurisprudencia en otro contexto, "no existe derecho de accesión sin dominio previo en aquel que pretenda ejercitarlo". Todo ello, claro está, con independencia de otros derechos que pudieran surgir entre las partes (saneamiento, responsabilidad, fe pública registral). (Bastardillas en el original. Énfasis adicional suplido.) Carrasco Perera, *op. cit.* pág. 339.

En torno al tema, Manresa, *op. cit.*, tomo III, pág. 212, indica que aunque el tercero puede dirigirse contra el dueño actual del terreno, la indemnización debe recaer sobre quien se ha aprovechado de la accesión.

En <u>Berrocal v. Tribunal</u>, *supra*, pág. 61, señalamos que:

> …tanto los comentaristas del derecho civil francés, como la jurisprudencia de los tribunales franceses, afirman, que el derecho a indemnización a que tiene derecho un edificante de buena fe… es un derecho inmueble, que puede ser vendido,

---

[53] Ignacio Rivera García, en su <u>Diccionario de términos jurídicos</u>, 2<sup>da</sup> ed., New Hampshire, Equity, 1985, pág. 33, define el término *carga* como "[d]erechos reales que gravan los inmuebles".

hipotecado, que afecta al derecho de superficie, y puede ser inscrito en el Registro de la Propiedad como un derecho de dominio independiente al derecho de dominio del dueño del suelo (…) No hay diferencia sustancial a este aspecto con lo que establece la legislación y la glosa española sobre el particular. (…) No existe tampoco diferencia sustancial con lo que establece la legislación y la glosa puertorriqueña correspondiente a la misma institución de derecho.

Por todo lo anterior, en aquella ocasión, resolvimos que:

> …el derecho de recibir compensación por los materiales y mano de obra que corresponde a todo edificante de buena fe, establecido sobre un edificio, es un derecho inmobiliario por estar constituido sobre una propiedad inmueble. Berrocal v. Tribunal de Distrito, *supra*, pág. 46

Dicha opinión concluye con un vaticinio de la controversia que hoy nos ocupa:

> Consagrar en nuestra jurisprudencia el principio que el derecho de indemnización de un edificante de buena fe sobre el suelo ajeno, es un
>
> bien mueble… sería un error grave. Bastaría entonces que el dueño del suelo ajeno vendiera, cediera o traspasara a otra persona el suelo sobre el cual se ha construido de buena fe, para que la alegada obligación personal… dejara al edificante de buena fe indefenso ante el nuevo adquirente.

Bernier nos explica que en el caso de que el inmueble donde el edificante ha efectuado obras se venda antes de que se verifique el pago de la indemnización, éste puede reclamar

> …del comprador que será quien aprovechará las obras… El comprador, sin embargo, puede repetir del vendedor cuando no se ha pactado nada diferente o de las circunstancias del negocio resulte una cosa distinta. Este derecho es consecuencia de la obligación de saneamiento que tiene el vendedor de acuerdo con los artículos 1363 y siguientes del Código Civil. 31 L.P.R.A. 3831 y subsiguientes. Bernier, *op. cit*. pág. 94.

Como todo derecho real, el derecho del edificante tiene acceso al Registro de la Propiedad. Su inscripción evita que terceros adquirentes aleguen tercería registral pues les es oponible lo que consta inscrito. Ley hipotecaria, artículos 38 y 53, 30 L.P.R.A. secs. 2201 y 2256. De igual forma, la posibilidad de inscripción asegura que quien adquiera sin que conste del Registro la existencia del edificante estará protegido contra el consiguiente reclamo de indemnización siempre que sea tercero de buena fe. La buena fe del tercero adquirente es obvio requisito para reclamar la protección que la Ley hipotecaria otorga en su artículo 105, 30 L.P.R.A. sec. 2355[54], por lo que si se llegase a probar que el nuevo adquirente conocía sobre la existencia de las mejoras, no le cobija dicha protección, aún cuando no conste inscrito el hecho de la construcción. Consejo de Titulares del Condominio Parkside v. Villa Edamorga, Inc., 2004 TSPR 77; Dennis Metro invs. V. City Federal Savings, 121 D.P.R.197 (1988).

IV

Del reseñado conjunto de artículos y doctrinas acerca de la accesión y la posesión se puede colegir su propósito restaurador dentro del marco de una controversia posesoria entre un propietario y un poseedor edificante de buena fe. Es decir, dichos preceptos otorgan remedios en equidad dentro del contexto específico de disputas por interdictos posesorios o demandas de accesión.

---

[54] La buena fe del tercero se presume siempre, mientas no se pruebe que al adquirir, este conocía la falta de exactitud del Registro.

Los artículos 380-387 del Código Civil, 31 L.P.R.A. secs.1466-1473, relativos a los derechos del poseedor presuponen que alguien le ha vencido o sucedido en la posesión, pero no concretan la causa por la que es vencido o sucedido, como apuntan Diez Picazo y Gullón en su Sistema de derecho civil, 6<sup>ta</sup> ed. Madrid, Tecnós, vol. III, pág. 135. Los autores concluyen que estos artículos deben tener, tanto un valor general que cederá ante la existencia de regulación concreta de la liquidación de un estado posesorio, como un valor supletorio para remediar la oscuridad o insuficiencia de tal regulación específica.

Según L. Diez Picazo y Gullón, *op. cit.* págs. 178-179:

> Cuando alguien opera sobre el terreno ajeno en virtud de una relación jurídica con su dueño que le faculta para ello que posteriormente se extingue, anula o resuelve… la situación debe regirse por las [normas] de aquella relación y, en su defecto, por las [normas] generales de los artículos sobre liquidación de estados posesorios.

El problema que hoy nos ocupa tiene la particularidad de que no se trata de una controversia posesoria, ni de una demanda de accesión. Siguiendo el razonamiento anterior, y a la luz de lo discutido sobre los derechos de un poseedor de buena fe ante terceros adquirentes, debemos determinar los derechos del optante que ha entrado en la posesión del bien opcionado, y tras haber efectuado mejoras, no ejerce su derecho de opción.

Se ha reconocido la existencia del contrato de opción de compra a pesar de que no está regulado por el Código Civil. Para la interpretación del alcance y naturaleza del contrato atípico de opción rigen, no las disposiciones sobre la compraventa, sino las que gobiernan las obligaciones y contratos en general. Rosa Valentín v. Vázquez Lozada, 103 D.P.R. 796, 804 (1975).

Jurisprudencialmente se han incorporado a nuestro ordenamiento los elementos que definen dicho pacto como uno consensual, mediante el cual una parte (promitente) le concede a otra parte (optante) el derecho exclusivo a decidir de manera unilateral si comprará determinado bien inmueble que le pertenece al promitente dentro de un período de tiempo definido por las partes. Hemos establecido reiteradamente que el contrato de opción es uno preparatorio, encaminado al eventual otorgamiento de un contrato de compra y venta. Irizarry López v. García Cámara, 2001 TSPR 161.

Los elementos esenciales del contrato de opción son los siguientes: (1) se concede al optante la facultad de decidir unilateralmente si celebrará el contrato principal (la compra y venta) sin ninguna obligación por parte de éste; (2) dicha concesión tiene carácter de exclusividad; (3) se establece un plazo para ejercitar la opción; y (4) no existe otra condición que no sea la voluntad del optante. En nuestra jurisdicción se ha adoptado la idea de que pesar de ser un contrato consensual, la opción de compra es un contrato

unilateral, porque el optante no está obligado a comprar, contrario al caso del promitente que sí está obligado a venderle al optante, si éste así lo decide. _Irizarry López v. García Cámara_, *supra*.

Con especial relación a la controversia particular que nos ocupa, L. Diez-Picazo en sus _Estudios sobre la jurisprudencia civil_, 2^{da} ed., Madrid, Vol. II, pág. 23-25, al comentar la Sentencia del Tribunal Supremo de España del 22 de abril de 1972, Col. Leg. Núm. 223, p. 312 explica que la ocupación del bien opcionado "prolongada a lo largo de un cierto lapso de tiempo" presenta cierta dificultad, pues no puede calificarse la ocupación del piso y entrega de la cosa, evidentemente, como nacida de un contrato de compraventa que ni se ha dado, ni se sabe que se dará. Por el contrario, dicha entrega posesoria requiere, según advierte Diez- Picazo, una calificación jurídica distinta "que no se ve muy claramente cual podría ser", aunque "[n]o parece una ocupación puramente precaria, pues está fundada en un titulo jurídico distinto del de la mera concesión o voluntad benévola del propietario."

José Ángel Torres Lana aclara el panorama y expone dos posibles instancias en las que se puede dar el fenómeno posesorio por el optante. Explica el autor que por un lado,

> …el hecho tendrá lugar necesariamente cuando la opción se yuxtaponga a otro contrato que implique por sí solo una transferencia posesoria. Este otro contrato constituye en tales casos el título legitimador de la posesión del optante; no

lo es el contrato de opción.  Torres Lana, *op. cit.*, pág. 217.

Un ejemplo que da el autor sobre esta situación particular es el contrato de arrendamiento con opción a compra, donde "el optante adquiere la posesión en virtud de su condición de arrendatario y como consecuencia obligada del contrato de arrendamiento." *Ibid.*

Por otro lado Torres Lana habla de una segunda modalidad en la posesión del optante, presente en los casos en que sus intereses requieran la posesión objeto del contrato "con independencia de cualquier cobertura contractual."  Dice el autor que este supuesto "se dará con más frecuencia cuando el contrato definitivo sea de naturaleza traslativa", aunque no necesariamente.  Torres Lana encuentra la razón de ser de esta modalidad posesoria en el principio liberal y rector en materia de contratos codificado en el artículo 1207 de nuestro Código Civil, que establece que los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público. 31 L.P.R.A. sec. 3372. Dice el autor que "las partes no solo son libres para pactar o no el desplazamiento posesorio, sino para conformar éste a su arbitrio con la extensión y alcance que tengan por conveniente", ello al punto de que no se configure la tradición. En este contexto, el optante que posee el bien opcionado "tiene un titulo legitimador de esa tenencia, que es el acto convenido en el contrato".

Por lo que "tanto el fundamento de su posesión, como su alcance y ámbito" se encuentran en las cláusulas contractuales. Véase Torres Lana, *op. cit.*, págs. 217-221.

Más adelante en su estudio sobre el contrato de opción, el mentado autor califica la posesión del optante como "posesión civil, en nombre propio y en principio de buena fe", Torres Lana, *op. cit.*, pág. 222. Aclara el autor que "resulta evidente que el optante no puede poseer en concepto de dueño de la cosa" pues el dominio pertenece al concedente, pero "su especial *ius possessionis* presenta (…) una textura de mayor consistencia que la que derivaría de la simple posesión en concepto distinto del de dueño". Para Torres Lana, el optante ostenta una "eventual vocación a adquirir", por lo que sus actos posesorios "pueden llegar mucho más allá que los de un poseedor no dominical". Torres Lana, *op. cit.,* pág. 224. El autor aconseja que los derechos del optante poseedor al momento de cesar en la posesión se configuren convencionalmente, y en defecto de pacto, "acaso el principio del enriquecimiento sin causa sea el cauce idóneo para remediar el desequilibrio patrimonial provocado." Torres Lana, *op. cit.*, pág. 223.

V

En el caso de autos la peticionaria fallecida entró en la posesión del bien inmueble en el contexto de un contrato de opción cuya naturaleza está arraigada a la autonomía de la voluntad. Con el transcurso del tiempo,

la Srta. Collazo no pudo ejercer su opción, pero no por esto perdió su condición de poseedora y edificante de buena fe y como tal, le corresponde a ella, y a sus sucesores, el derecho de indemnización concedido a las personas que edifican y mejoran los inmuebles ajenos con permiso o aquiescencia del propietario.

Durante su posesión la Srta. Collazo llevó a cabo obras de construcción que el Tribunal de primera Instancia calificó como una reconstrucción y remodelación del inmueble. Dicho proyecto de reconstrucción y remodelación incluyó la incorporación de mejoras cuyos gastos fueron considerados por el Tribunal de Primera Instancia gastos útiles. Como ya hemos discutido, toda obra o mejora efectuada en terreno ajeno puede ser objeto de accesión. Anteriormente en esta Opinión explicamos que cualquier tipo de construcción cae bajo el régimen de accesión aplicable a las edificaciones. A esos efectos, mencionamos que en Freyre v. Blasini, *supra*, calificamos la construcción de un horno como una edificación. En Sucesión Echegaray v. Esso Standard Oil, *supra*, ofrecimos ejemplos de los distintos tipos de construcción que pueden ser objeto de accesión, pero no tuvimos la oportunidad de abundar sobre los efectos jurídicos de la accesión en los distintos tipos de obra. Aprovechamos hoy para establecer que, si bien toda construcción en propiedad ajena es objeto de accesión, no toda obra o mejora efectuada en un bien inmueble ajeno que luego es enajenado, es oponible frente a tercero para efectos de

indemnización. Resolvemos que esta posibilidad debe reservarse para obras o mejoras de carácter sustancial y permanente como las construidas en el caso de autos.

La determinación sobre qué tipo de mejora es sustancial y permanente y por tanto oponible frente a quien no ostente el rango de tercero de buena fe, deberá hacerse caso a caso.[55] Sin embargo no podemos olvidar que cuando se lleven a cabo mejoras simples como parte de un proyecto de construcción donde se efectúen otras mejoras sustanciales y permanentes oponibles a tercero, las primeras quedarán sujetas al mismo régimen de las segundas, puesto que en nuestro derecho de propiedad lo accesorio sigue a lo principal.

Si bien es cierto que en el caso que nos ocupa el derecho que hoy reconocemos no trascendió al ámbito registral pues la edificante y poseedora nunca lo inscribió, también es cierto que **los recurridos aceptaron que conocían sobre la existencia de dichas mejoras antes de adquirir el bien inmueble**. Los recurridos no pueden alegar que son terceros de buena fe. Su total conocimiento acerca de la reconstrucción y remodelación llevada a cabo en la propiedad, y de las circunstancias en que el inmueble fue vendido sin indemnización a la

---

[55] Mediante el testimonio de la peticionaria, Sra. Ana Vázquez, al cual el foro de primera instancia confirió

entera credibilidad, se probaron hechas ampliaciones estructurales tales como una terraza techada, columnas y pisos. Además se probó que, entre otras cosas, se remodeló completamente la cocina, baños y un cuarto, dichas obras, al igual que las anteriormente mencionadas constituyen este tipo de mejora sustancial y permanente.

poseedora edificante les impide dicha protección, pues sabían que sobre inmueble que estaban adquiriendo pesaba una carga.

Como se ha discutido anteriormente, el Código Civil en su artículo 297, *supra*, favorece al propietario de un inmueble donde se ha edificado o que se ha mejorado de buena fe, al ofrecerle la opción de escoger entre abonar el costo de los materiales y mano de obra, o abonar el valor que haya adquirido el inmueble por las mejoras. En el caso de <u>Viera v. Arizmendi</u>, *supra*, pág. 48, en el contexto de una acción de accesión, nos expresamos con relación al alcance de la naturaleza alternativa de la obligación de indemnizar al poseedor de buena fe dispuesta en el artículo 297, *supra*. Aclaramos que si no se presenta prueba en el tribunal inferior en cuanto al valor aumentado del terreno luego de efectuadas las mejoras, pero se presenta prueba del costo de los materiales y de la mano de obra, la controversia debe limitarse al costo original de dichos materiales y mano de obra como factor para establecer la indemnización, y a eso debe contraerse la sentencia.[56] Nos referimos en aquella ocasión a la sentencia del entonces Tribunal Contencioso-administrativo de España[57] del 17 de marzo de

---

[56] Véase también la parte dispositiva de nuestra opinión en <u>Colón v. Club Rotario de Arecibo</u>, 64 D.P.R. 578 (1945), donde el propietario del terreno en que se construyó de buena fe se había negado en su demanda de desahucio a indemnizar al edificante. Allí concluimos que procedía el reembolso de los gastos en materiales y mano de obra.

[57] La ley del 5 de abril de 1905 transfirió la jurisdicción de este tribunal a las Salas 3ra y 4ta del Tribunal Supremo Español.

1897, citada por Manresa, en la cual se decidió que "no haciendo uso el propietario del derecho de opción que le concede el artículo 453, [equivalente a nuestro artículo 382] lo más justo es abonar el importe de los gastos útiles o mejoras hechas en la finca". Manresa, Comentarios al código civil español, 7ma. ed., Madrid,

Reus, 1972, tomo IV, vol. I, págs. 350-351. Estas fueron nuestras palabras:

> …debe surgir de los autos que el dueño del terreno, haya ejercitado la opción, Manresa, *op. cit.*, pág. 317, y que así lo haya expresado formalmente, a los fines de que la otra parte tenga la oportunidad de prepararse adecuadamente en cuanto a los elementos de prueba envueltos en esa segunda modalidad de la opción. Venta v. Ferrara, 195 La 334, 196 So 550 (1940); Foster v. Meyers, 117 La 216, 41 So 551 (1906); Hutchinson v. Jamison, 38 La Ann 150 (1886).
> Si el demandante no ha ejercitado la opción en esa forma o si no se ha presentado prueba en el tribunal inferior en cuanto al valor aumentado del terreno, presentándose prueba del costo de los materiales y de la mano de obra, la sentencia debe referirse exclusivamente a dicho costo de los materiales y mano de obra. Hutchinson v. Jamison, *supra*; Manresa, *op. cit.*, pág. 317… Bajo esas circunstancias, la controversia debe limitarse exclusivamente al costo original de los materiales y la mano de obra y no procede consideración alguna de la depreciación o del 'provecho útil' de la casa.

En el caso ante nuestra consideración, el Tribunal de Primera Instancia le adjudicó entera credibilidad a la prueba presentada sobre las mejoras que hizo la hija de los peticionarios al remodelar y reconstruir el inmueble objeto de este litigio. Los testimonios, los cheques y facturas sobre los gastos reales en que incurrió la Srta.

Collazo fueron admitidos como evidencia del monto de los gastos a ser indemnizados por concepto de mejoras. Esta prueba no fue refutada efectivamente. Repetidamente hemos establecido que en asuntos de credibilidad de la prueba testifical concederemos gran deferencia a las determinaciones de hechos efectuadas por los tribunales de instancia. Las decisiones de los foros apelativos están basadas únicamente en un examen del expediente del caso. Por eso, en ausencia de error, pasión, prejuicio y parcialidad, la apreciación de la prueba hecha por el Tribunal de Primera Instancia no debe ser cuestionada, y el foro apelativo no debe prescindir de y permutar por sus propias apreciaciones las determinaciones tajantes y ponderadas del foro de instancia. Véase Argüello López v. Argüello García, 2001 TSPR 124; Trinidad García v. Chade, 2001 TSPR 7; Rolón García y otros v. Charlie Car Rental, 1999 TSPR 83; López Vicil v. ITT Intermedia Inc., 142 D.P.R. 857, 864 (1997).[58]

Por consiguiente, no habiéndose demostrado que el Tribunal de Primera Instancia actuó en este caso movido por pasión, prejuicio, parcialidad ni incurriera en error manifiesto, y al estar ese tribunal en mejor posición que este foro para dirimir la prueba, sus determinaciones deben prevalecer "a menos que la apreciación de la evidencia se aleje de la realidad fáctica o la prueba sea

---

[58] Claro está, ello no implica que gocen de credenciales de inmunidad ante la función revisora de este Tribunal. Rivera Pérez v. Cruz Corchado, supra; Vélez v. Srio. de Justicia, 115 D.P.R. 533, 545 (1984); Vda. de Morales v. De Jesús Toro, 107 D.P.R. 826, 829 (1978).

inherentemente imposible o increíble", lo cual tampoco sucede en esta instancia. Pueblo v. Maisonave Rodríguez, 129 D.P.R. 49, 63 (1991). Considerando la prueba presentada y admitida en el foro inferior, y no habiéndose presentado prueba alguna para refutar la de

los peticionarios, debemos adjudicar de acuerdo al razonamiento establecido en Viera v. Arizmendi, supra.

Los gastos por mejoras, que según determinó el Tribunal de Primera Instancia ascendieron a $29,472.00, aumentaron el valor de la propiedad de los recurridos, por lo que éstos se han beneficiado de la reconstrucción y remodelación que efectuó la fenecida en la propiedad objeto de este litigio. Además, quedó probado en el foro de primera instancia que los recurridos tenían conocimiento de las mejoras en las que había invertido su entonces amiga, la fenecida hija de los peticionarios. Los recurridos no pueden alegar ser terceros pues registrales carecen del requisito de la buena fe. Por tanto, consistente con el carácter real de las obras de buena fe efectuadas en suelo ajeno, resolvemos que como dueños actuales del inmueble, los recurridos están obligados a indemnizar a quien de buena fe incorporó, tanto mejoras sustanciales como mejoras simples que forman parte del mismo proyecto de construcción.

Aún cuando no reconociéramos los derechos antes expuestos, no podemos obviar la esencia equitativa que conforma el articulado que regula los derechos de

constructores en propiedad ajena, ni su espíritu como disuasivo del enriquecimiento injusto. Como hemos expresado en anteriores opiniones, al considerar la doctrina de enriquecimiento injusto debe tenerse en mente que se trata de una doctrina o principio general de derecho que puede aplicarse a situaciones muy distintas entre sí, siempre y cuando tengan en común un elemento: el que de no aplicarse se perpetraría la inequidad de que alguien se enriqueciese injustamente en perjuicio de otro. Se trata de una doctrina general basada en la equidad, reconocida por el derecho de todos los países civilizados, que domina muchas relaciones de derecho privado y cada día dominará más, susceptible de aplicación en múltiples casos que son imposibles de prever. Se le considera como un principio general que opera en todo el ámbito del derecho, casi tan antiguo como el derecho mismo. El enriquecimiento injusto es un corolario del concepto de equidad, lo cual equivale a decir que es un corolario del concepto de la justicia misma. Silva v. Comisión Industrial, *supra*; Colón v. Glamorous Nails & Boutique, Inc., *supra*.[59] Por tales razones, y aún prescindiendo de las consideraciones estatutarias discutidas en nuestra ponencia, consideramos

---

[59] Véanse además Moringlane & Lledó v. Skerret, 44 D.P.R. 874 (1933); Compañía Popular v. Corte, 63 D.P.R. 121 (1944); Freyre v. Blasini, 68 D.P.R. 211 (1948); Plan Bienestar Salud v. Alcalde Cabo Rojo, 114 D.P.R. 697 (1983); Morales v. Municipio de Toa Baja, 119 D.P.R. 682 (1987); Ortiz Andújar v. E.L.A., 122 D.P.R. 817 (1988); A.E.E. y A.A.A. v. P.N.P., 128 D.P.R. 294 (1991); Municipio de Cayey, v. Ángel Soto Santiago *et al,* 131 D.P.R. 304, (1992);

que quien adquiere un inmueble mejorado sin estar protegido por los principios de la buena fe, debe reponer los gastos correspondientes al optante poseedor y edificante.

En virtud de lo anterior, y de acuerdo al carácter equitativo y restaurador de los artículos relativos a la posesión, a los derechos del poseedor ante la accesión, y a la condición de poseedor de buena fe de la optante en este caso, concluyo que erró el Tribunal de Apelaciones al desestimar la demanda de los peticionarios. Por tales consideraciones me uno a la decisión de revocar parcialmente la sentencia de ese foro y ordenar a los recurridos a pagar a los peticionarios la cantidad de $29,472.00 por concepto de los gastos incurridos en las mejoras al inmueble de su propiedad.


Liana Fiol Matta
Jueza Asociada